(C.D. 4123)

CHARBERJOY DISTRIBUTORS, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided November 10, 1970)

*Meyers & Matthias; Schwartz & Lidstrom,* associate counsel; (*Earl R. Lidstrom, Bruce E. Pashley,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Robert T. Richardson* and *Velta A. Melnbrencis,* trial attorneys), for the defendant.

Before RAO, FORD, and RICHARDSON, Judges

RICHARDSON, Judge: Stainless steel knives, among other items of flatware, imported at Chicago, Ill. in 1964 from Japan and covered by three protests consolidated for trial herein, were classified in liquidation under item 927.53 of the Tariff Schedules of the United States and assessed for duty at the rate of 3 cents each plus 67.5 per centum ad valorem. In its protests the plaintiff-importer claims that these knives should be classified under item 650.15 of the tariff schedules at the duty rate of 2 cents each plus 12.5 per centum ad valorem—the basis upon which the knives in question were entered by the importer.

The knives in issue are identified in the entry papers as items #3 and #3X, Dessert knife, serrated, and item #6, Steak knife, serrated, all of the "Five Star" pattern.

The competing tariff provisions read:

[Classified]

### APPENDIX TO THE TARIFF SCHEDULES

PART 2.  TEMPORARY MODIFICATIONS PROCLAIMED PURSUANT TO TRADE-AGREEMENT LEGISLATION

\*        \*        \*        \*        \*        \*        \*

### SUBPART A.—ESCAPE-CLAUSE ACTIONS

\*        \*        \*        \*        \*        \*        \*

Knives, forks, and spoons, all the foregoing valued under 25 cents each, not over 10.2 inches in overall length, and with stainless steel handles (provided for in items 650.09, 650.11 . . . of part 3E of schedule 6 . . . :

\*        \*        \*        \*        \*        \*        \*

Other:
927.53  Knives and forks (items 650.09, 650.11 . . .)          3¢ each +
                                                                67.5%
                                                                ad val.

[Claimed]

### SCHEDULE 6. – METALS AND METAL PRODUCTS

\*        \*        \*        \*        \*        \*        \*

### PART 3. – METAL PRODUCTS

\*        \*        \*        \*        \*        \*        \*

### SUBPART E. – TOOLS, CUTLERY, FORKS AND SPOONS

\*        \*        \*        \*        \*        \*        \*

Knives not specifically provided for elsewhere in this subpart, and cleavers, with or without their handles:

\*        \*        \*        \*        \*        \*        \*

Knives with their handles:

\*       \*       \*       \*       \*       \*       \*

With rubber or plastics handles:

650.15       Table, kitchen, and butcher knives_   2¢ each + 12.5%
ad val.

The evidentiary record developed herein at the trial, which appears not to be in dispute, concerns the materials composition of the handles of the knives in issue. Samples of these knives were placed in evidence by plaintiff as exhibits 1, 2, and 4. A portion of the handle of each of these exhibits contains what appears to the eye and to the touch to be a black plastic surface which is integral with the stainless steel surface of the handle. With respect to exhibit 1 depicting the item 3X dessert knife and exhibit 2 depicting the item 6 steak knife, Richard C. Lindberg, a patent attorney and a graduate civil engineer who was called as a witness on plaintiff's behalf, testified that he examined and measured these exhibits at the request of plaintiff's counsel, and that with the aid of a polarplanimeter he calculated the surface area of the handles occupied by the plastic and metal portions thereof. The witness' calculations were reduced to writing, which writing was received in evidence as exhibit 3–A along with a typewritten correction, received in evidence as exhibit 3–B.

It appears from the calculations shown on exhibits 3–A and 3–B that the percentage of stainless steel in the handle of exhibit 1 (item 3X knife) is 45.6 percent of the handle area, and that the percentage of stainless steel in the handle of exhibit 2 (item 6 knife) is 51.0 percent of the handle area. And it was conceded by plaintiff's counsel at the trial that the quota involved in the item 927.53 classification was closed prior to the importation of the involved merchandise. Also, no evidence was adduced bearing upon the value of the imported flatware in issue.

Consistent with the allegations of the protests and the evidence presented, plaintiff's counsel stated at the trial that he believed the only issue involved in the case to be whether the handles of the knives in question are composed of stainless steel or of plastic, and that if the handles are of stainless steel then the quota rates would apply. Indeed, it appears that the case was tried and submitted to the court for decision on that theory. However, in its brief plaintiff additionally undertakes to attack the legality of item 927.53 imposing the so-called quota rates, and which provision is predicated upon Presidential Proclamation No. 3323 of October 20, 1959 (T.D. 54969) issued under the escape-clause provision of the 1930 Tariff Act as amended (19 U.S.C.A., section 1364). This proclamation *suspended* trade agreement concessions made by the United States on importations of stainless steel

table flatware wholly of metal and in chief value of stainless steel, not over 10.2 inches in over-all length and valued under $3.00 per dozen pieces, after exhaustion of an annual quota on imports which the proclamation imposed, and also *increased* the statutory duty rates to be assessed against over-quota importations. And item 927.53, although not accorded statutory effect,* is the embodiment and implementation of proclamation 3323 in the transition from the schedules of the Tariff Act of 1930 to the Tariff Schedules of the United States.

We think the instant protests properly present the issue as to whether item 927.53 covers the merchandise at bar, i.e., whether the handles of the knives in question are composed of stainless steel. We also think that protests 67/9716 and 67/9730 present the additional question pertinent to item 927.53 classification as to whether the knives in question are valued under $3.00 per dozen pieces, as each of these two protests claim that the merchandise in question was valued over $3.00 per dozen F.O.B. Japan. We do not, however, think, that the protests at bar present any issue to the court as to the legality of item 927.53. No such claim of illegality is made in the protests expressly. And by implication the claims made in the protests proceed upon the assumption that item 927.53 is valid, and that for one reason or another, the merchandise at bar does not come under it. Defendant characterizes the claim of illegality in plaintiff's brief as constituting "a new and additional claim" [defendant's brief, page 3]. Under the circumstances of this record we agree with that characterization of the nature of plaintiff's claim of illegality.

Since the issue of illegality as advanced in plaintiff's brief was not called to the collector's attention in the protests or the protests amended in this court to include such claim, we are of the opinion, and so hold, that the issue of illegality of item 927.53 of the tariff schedules, including any question as to the legality of Presidential Proclamation No. 3323 on which item 927.53 is based, is not before the court for determination. *American Mail Line, Ltd.* v. *United States*, 34 CCPA 1, C.A.D. 335 (1946); *Carson M. Simon & Co.* v. *United States*, 57 Cust. Ct. 224, 229, C.D. 2768 (1966). Consequently, in view of this conclusion we pursue here only the question as to whether the knives at bar were properly classified under item 927.53 in terms of identity and value of merchandise covered by item 927.53.

With respect to the issue of value, it appears that plaintiff has abandoned its contention under protests 67/9716 and 67/9730 that the knives in issue are valued over $3.00 per dozen. As was previously indicated herein, no evidence of value of the knives at the time of

---

*See 76 Stat. 74.

importation was presented at the trial. Therefore, this particular claim has not been established.

With respect to identity of merchandise covered by item 927.53 classification, the evidence in this record clearly shows that the imported knives possess handles which are composed in substantial part of a non-metallic material, a plastic. Item 927.53, the temporary provision, and items 650.09 and 650.11, the permanent provisions to which item 927.53 refers, all contain the qualifying phrase "with stainless steel handles". This latter phrase we think is incompatible with a description of a knife "with stainless steel and plastic handle"—the characterization most accurately identifying the knife handles at bar, according to the evidence. And we find nothing in the tariff schedules themselves or in the Tariff Classification Study notes* which indicates that the language "with stainless steel handles" is to be given any construction other than a literal one. In fact, the juxtaposition of the language "with stainless steel handles" in part 3E of schedule 6 of the tariff schedules with coordinate provisions for knives with handles composed of other, specifically designated materials, indicates to the contrary. Thus, under the inferior heading "knives with their handles" there are five (5) subdivisions of knives with handles, grouped according to the specific material of which the handle is composed, followed by a sixth or residual grouping designated only as "other." Such arrangement indicates, in our opinion, that Congress intended to classify "knives with their handles" according to the single, specific material of which the handles were composed, or if not so made, then under a residual category.

In view of this reasoning, we are of the opinion that the imported knives, possessing as they do, handles composed of stainless steel and plastic, could not properly be classified under a provision for knives "with stainless steel handles" such as item 927.53. And it follows, conversely, by the same token that the imported knives could not properly be classified under a provision for knives "with . . . plastics handles" such as item 650.15 on which plaintiff relies herein. The proper classification for the imported knives here involved would be in our view the residual provision for "other" knives contained in item 650.21, dutiable at one cent each plus 17.5 per centum ad valorem. Classification according to the material in the handle (where there is an admixture of materials) which is dominant either in terms of physical presence or in terms of utilitarian value, as the parties contend, respectively, would be appropriate to consider, if there was no residual category. But since there is a residual category as noted herein, we

*Tariff Classification Study, pages 196–197.

are not persuaded that Congress intended to classify knives in the manner contended for by the parties.

Since plaintiff has advanced no claim in its protests for classification of the involved knives under item 650.21 of the tariff schedules, there is no relief which we can grant plaintiff in this case from the consequences of improper classification of such merchandise. The protests are, therefore, overruled, without, however, affirming the classification made by the collector under the entries covered thereby.

Judgment will be entered accordingly.