**BORDER BROKERAGE CO., INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

Appeal No. 80–17.

United States Court of Customs and Patent Appeals.

April 16, 1981.

---

Michael J. Horton, San Francisco, Cal., for appellant, George R. Tuttle, San Francisco, Cal., of counsel.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Velta A. Melnbrencis, New York City, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Associate Judges.

MILLER, Judge.

This appeal is from a judgment of the United States Customs Court (now the United States Court of International Trade), 83 Cust.Ct. 97, C.D. 4825, 484 F.Supp. 901 (1979), dismissing appellant's action (challenging an administrative dumping finding) "for failure of proof." We affirm.

## BACKGROUND

The involved merchandise consists of steel reinforcing bars manufactured in and exported from Canada between February 19, 1963, and March 6, 1964, by Western Canada Steel, Limited, through its subsidiary, Vancouver Rolling Mills, Limited, of Vancouver, Canada. Pursuant to proceedings under section 201(a) of the Antidumping Act of 1921, as amended (19 U.S.C. § 160(a)),[1] the Secretary of the Treasury

1. 19 U.S.C. § 160. Foreign merchandise sold or likely to be sold at less than fair value

Initiation of investigation by International Trade Commission; determination of injury to United States industry; finding; publication of finding

(a) Whenever the Secretary of the Treasury (hereinafter called the "Secretary") determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States or elsewhere at less than its fair value, he shall so advise the United States International Trade Commission (hereinafter called the

"Commission"), and the Commission shall determine within three months thereafter whether an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation of such merchandise into the United States. The Commission, after such investigation as it deems necessary, shall notify the Secretary of its determination, and, if that determination is in the affirmative, the Secretary shall make public a notice (hereinafter in sections 160 to 171 of this title called a "finding") of his determination and the determination of the Commis-

("Secretary") determined that the steel reinforcing bars were being, or were likely to be, sold at less than fair value ("LTFV") in the United States.[2] After being so advised by the Secretary, the United States Tariff Commission, now the United States International Trade Commission ("Commission"), conducted an investigation and hearing and determined that an industry in the United States was being or was likely to be injured by reason of importation and sale of the steel reinforcing bars.[3] The vote of the six-member Commission was evenly divided. Thus, there was "an affirmative determination" of injury for purposes of 19 U.S.C. § 160(a). The Secretary was so notified, and a "finding of dumping" was published on behalf of the Secretary in the Federal Register.[4]

Appellant unsuccessfully appealed to the Customs Service for reappraisement[5] and then brought an action in the Customs Court contesting the Secretary's LTFV determination and the Commission's injury determination. Regarding the injury determination, appellant's allegations in its complaint and the Government's answers were as follows:

*Allegation*

16. Plaintiff claims the imposition of anti-dumping duties is illegal, null and void on the ground that the Tariff Commission exceeded its statutory authority and denied the rights of the plaintiff to a fair and partial [*sic*] adjudication as guaranteed by the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act by finding the likelihood of injury to an American industry to exist when the evidence failed to support the finding that an injury was likely to be caused to an American industry by importations at less than fair value.

*Answer*

16. Admits that paragraph 16 sets forth plaintiff's claims, but denies the correctness thereof; further answering, *defendant avers that plaintiff has not suffered any legal wrong cognizable under the due process clause of the Fifth Amendment and the Administrative Procedure Act.* [Emphasis added.]

*Allegation*

17. Plaintiff claims the imposition of anti-dumping duties is illegal, null and void on the ground that the Tariff Commission violated its statutory authority and denied the plaintiff the right to a fair and impartial administrative adjudication as guaranteed by the Due Process Clause of the Fifth Amendment and Administrative Procedure Act by basing its likelihood of injury determination in part on the mere presence of sales at less than fair value.

*Answer*

17. Admits that paragraph 17 sets forth plaintiff's claim, but denies the correctness thereof; *incorporates and realleges paragraph 16, supra.* [Emphasis added.]

In its post-trial brief, appellant apparently abandoned the above allegations, prompting the Court of International Trade to find—

that plaintiff's disenchantment with the "finding of dumping" lies not with the Treasury Secretary's LTFV determina-

---

sion. *For the purposes of this subsection, the Commission shall be deemed to have made an affirmative determination if the Commissioners of the Commission voting are evenly divided as to whether its determination should be in the affirmative or in the negative.* The Secretary's finding shall include a description of the class or kind of merchandise to which it applies in such detail as he shall deem necessary for the guidance of customs officers. [Emphasis supplied.]

**2.** 28 Fed.Reg. 14,245 (1963).

**3.** 29 Fed.Reg. 3840 (1964).

**4.** 29 Fed.Reg. 5341 (1964).

**5.** Appellant has not contested the appraisements based upon export value, but, rather, the values determined under the Antidumping Act and the underlying injury determination. *See City Lumber Co. v. United States,* 59 CCPA 89, C.A.D. 1045, 457 F.2d 991 (1972).

tion *per se* nor with the Commission's injury determination *per se* in the particulars as set out in its complaint, but rather with the manner in which the Commission *voted* its injury determination. In the brief plaintiff contends that the provision in 19 U.S.C.A., section 160(a) (section 201(a), Antidumping Act of 1921, as amended) which allows the Commission to make a finding of likelihood of injury upon a divided vote of the commissioners voting, as in this case, is in violation of Parliamentary Law, the Rules of Congress, the Tenth Amendment to the federal constitution, the Due Process Clauses of the Fifth and Fourteenth Amendments to the federal constitution, Fundamental Rights, and the concept of Ordered Liberty . . . .

The court then said:

None of these belated contentions advanced in plaintiff's brief are even remotely connected with allegations of the complaint. Moreover, the due process claims set forth in paragraphs 16 and 17 of the complaint are addressed to evidentiary considerations, while the due process contention in plaintiff's brief is not addressed to evidentiary matters or to the underlying administrative record at all. Consequently, the court fully agrees with defendant that the matters discussed in plaintiff's brief are wholly outside of the parameters of the pleadings, and, as such, are not properly before the court. *Cf. Charberjoy Distributors, Inc. v. United States*, 65 Cust.Ct. 459, 462, C.D. 4123 (1970), *aff'd on other grounds*, 59 CCPA 207, C.A.D. 1068, 465 F.2d 922 (1972). And since plaintiff has in effect abandoned its claims as pleaded, the *regularity* of the challenged administrative determinations are [sic] presumed, the court not being persuaded of the existence of evidence in the record to the

contrary. . . . In view of the 14-year lifespan of the case during which plaintiff has had ample opportunity to develop a plenary record for meaningful judicial review of the administrative determinations herein, the court is constrained to and does dismiss this action for failure of proof. . . .

83 Cust.Ct. 97, 484 F.Supp. 901, 903.

## OPINION

Appellant argues that "due process in all forms was raised by the Government" in its responses to paragraphs 16 and 17 in plaintiff's complaint. However, we are persuaded that the Government's answers are to be read in light of the allegations, which specify a failure of evidence "to support the finding [of likelihood of injury]" and the Commission's "basing its likelihood of injury determination in part on the mere presence of sales at less than fair value." [6] Therefore, we agree with the Court of International Trade that appellant's Fifth Amendment due process claims set forth in paragraphs 16 and 17 are addressed only to evidentiary considerations and that the matters discussed for the first time in appellant's post-trial brief are wholly outside the pleadings.

The question remains whether appellant's Fifth Amendment due process argument should, nevertheless, have been considered by the court below.[7] In deciding that this argument was not properly before it, the court cited *Charberjoy Distributors, Inc. v. United States, supra*, in which the Customs Court held that the issue of illegality of item 927.53, TSUS, was not before the court because the protests did not contain any claim of illegality. This court affirmed, but the issue of illegality was not involved in the appeal. In *Aronoff Galleries, Inc. v. United States*, 1 Cust.Ct. 225, C.D. 51 (1938), the Customs Court held that where

---

**6.** The Court of International Trade has indicated that the purpose of the pleadings is to narrow the issues. *Lansing Co. v. United States*, 77 Cust.Ct. 92, 95 n.5, C.D. 4675, 424 F.Supp. 112, 115 n.5 (1976); *Berkey Technical Corp. v. United States*, 71 Cust.Ct. 275, 277, C.R.D. 73–27, 380 F.Supp. 786, 788 (1973).

**7.** In this appeal, appellant has effectively abandoned the other "belated contentions" advanced in its post-trial brief, not arguing them in its appellate briefs except for the conclusory statement that the tie vote provision "is contrary to the concept of Ordered Liberty."

the pleadings contained no statement that the suit was one which involved a controversy over a constitutional right (under Article 1, section 8, paragraph 1, and section 9, paragraphs 5 and 6), this being the sole question raised by plaintiff's post-trial brief, the question was not before the court. It cited three Supreme Court cases: *Gibbes v. Zimmerman*, 290 U.S. 326, 54 S.Ct. 140, 78 L.Ed. 342 (1933), which held that the question of whether a state law violates the contract clause of the Federal Constitution could not be considered on appeal where there was no reliance on that clause in the pleadings; *Montana Catholic Missions v. Missoula County*, 200 U.S. 118, 26 S.Ct. 197, 50 L.Ed. 398 (1906), which held that the lower court was correct in dismissing a complaint for lack of jurisdiction where the complaint did not set forth any question involving the construction or application of the Federal Constitution, or the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority; and *Defiance Water Co. v. Defiance*, 191 U.S. 184, 24 S.Ct. 63, 48 L.Ed. 140 (1903), which held that the lower court erred in retaining jurisdiction on the ground that the case arose under the Constitution of the United States where it did not appear in the pleading that the suit was one which substantially involved a controversy over a right depending on construction of the Constitution or some law or treaty of the United States.

■ This court has ordinarily followed a practice of not considering issues raised for the first time on appeal. *See, e. g., American Mail Line, Ltd. v. United States*, 34 CCPA 1, C.A.D. 335 (1946) (holding that protests, claiming that articles and repairs assessed did not fall within the meaning of the term "equipment and repairs," did not support argument on the issue that the involved ship was not of U.S. registry, and citing requirements of section 514 of the Tariff Act of 1930 for filing protests); *International Seaway Trading Corp. v. United States*, 61 CCPA 20, 24–25, C.A.D. 1112, 488 F.2d 544, 547 (1973); *Anderson Organization v. United States*, 46 CCPA 47, 50, C.A.D. 694 (1958); *Lloyd's Subagent v.*

*United States*, 19 CCPA 408, 410, T.D. 45576 (1932); *United States v. Sheldon & Co.*, 5 Ct.Cust.Appls. 427, T.D. 34946 (1914). On the other hand, in *City Lumber Co. v. United States, supra* 59 CCPA at 96, 457 F.2d at 997, where the point that "the Commission gave weight to an alleged intention to systematically import cement at less than fair value" was raised for the first time on appeal by the appellant, this court said:

We do not refuse consideration altogether on this technicality, however, because it seems preferable to state our view that intent is a perfectly legitimate matter for the Commission to take into consideration.

*See also United States v. Perry Ryer & Co.*, 41 CCPA 18, 30, C.A.D. 524 (1953).

No case has been brought to our attention in which the issue of deprivation of Fifth Amendment due process was raised for the first time in a post-trial brief and denied consideration. However, more recent opinions of the Supreme Court reflect a policy to consider constitutional issues not considered below where no refinement or clarification is required, and the question is ripe for consideration. *United States v. Petrillo*, 332 U.S. 1, 7, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947). *See Glidden Co. v. Zdanok*, 370 U.S. 530, 536, 82 S.Ct. 1459, 1465, 8 L.Ed.2d 671 (1962); *Turner v. City of Memphis*, 369 U.S. 350, 353, 82 S.Ct. 805, 807, 7 L.Ed.2d 762 (1962). Several circuits have indicated a similar policy. In *Krause v. Sacramento Inn*, 479 F.2d 988, 989 (1973), the Ninth Circuit said that examination of the issue of equal protection under the Fourteenth Amendment (not undertaken by the district court)—

would not necessarily be foreclosed to our court merely because it was not presented below. When we have declined to consider issues raised by appellants for the first time on appeal ... we have not been motivated by any jurisdictional limitation but merely by a rule of practice. Relaxation of this rule is sometimes appropriate in appeals wherein there are significant questions of general impact or when injustice might otherwise result. ...

In *Board of Managers of Arkansas Training School for Boys v. George*, 377 F.2d 228, *cert. denied*, 389 U.S. 845, 88 S.Ct. 105, 19 L.Ed.2d 114 (1967), the Eighth Circuit, in an interlocutory appeal from denial of a motion to dismiss by appellant before appellant had even filed an answer, held an Arkansas statute unconstitutional, saying that "it is not necessary to attack statutes by specific pleading which on their face are unconstitutional" (citing *Turner v. City of Memphis, supra*). In *Government of Virgin Islands v. Testamark*, 528 F.2d 742, 744 (1976), where a constitutional attack on a Virgin Islands statute had not been raised in the district court, the Third Circuit recognized that "we have the power to notice constitutional issues presented for the first time on appeal [citing the *Krause v. Sacramento Inn* and *Glidden Co. v. Zdanok* cases, *supra*]." However, the court stated that it would not exercise that power unless such issues were accompanied by an adequate record on which to base an informed decision, and it observed that "we have before us only the skimpiest of allegations set forth by appellant." In *Wratchford v. S. J. Groves & Sons Co.*, 405 F.2d 1061 (CA4 1969), the district court had directed a verdict for the defendants on the assumption that, in the diversity action, the Maryland standard for sufficiency of the evidence applied. There was no suggestion that a federal standard was applicable. After filing a notice of appeal, plaintiffs filed a motion contending, for the first time, that a federal standard controlled. The motion was denied and no appeal was taken from the denial, so that, as the Fourth Circuit noted, "in a technical sense, it is not before us." In reversing, the court declared:

> Ordinarily, of course, a party should not be allowed to change the theory of his case after trial, but when fundamental rights are involved appellate consideration is appropriate, despite inconsistency in the appellant's position. The right to a jury trial and our traditional faith in the jury's capacity to resolve factual disputes is basic to our federal system of judicial administration. [Footnotes omitted.]

Although not involving constitutional issues, another case deserves mention. In *Green v. Brown*, 398 F.2d 1006 (C.A.2 1968), involving an alleged violation of the Investment Company Act of 1940 (15 U.S.C. § 80a–1 et seq.), defendants-appellees argued that plaintiff-appellant was foreclosed from raising the point of an alleged violation of section 21 of the Act because it was not mentioned below. The Second Circuit referred to an earlier opinion in which it said "the rule that an order will not be reversed upon a point first raised upon appeal is not absolute, in spite of our unconditional statement to the contrary," and added:

> While we would not ordinarily be receptive to attempts to litigate issues not raised in the trial court, this appears to be a case calling for relaxation of the usual rule, since the issues now raised are of great significance in construing an act designed to protect thousands of investors. [Footnote omitted.]

We recognize that a policy followed by the Supreme Court and intermediate appellate courts may not necessarily apply to the trial courts. However, in *Aronoff Galleries, Inc. v. United States, supra*, the Customs Court obviously looked to the Supreme Court for guidance in deciding to not consider a constitutional question raised for the first time in a post-trial brief. Subsequent Supreme Court and circuit court cases reviewed above are persuasive that, in the circumstances of this case, the Court of International Trade should have considered appellant's argument on the Fifth Amendment due process issue. This argument is, quite simply, that the provision in 19 U.S.C. § 160(a), that the Commission shall be deemed to have made an affirmative determination (of injury) if the Commissioners voting are evenly divided on the question, is facially unconstitutional in that due process requires a majority to make such a determination. We do not regard such an argument as frivolous; the Fifth Amendment due process right is involved—one of far greater moment than that which persuaded this court to relax its usual practice in *City Lumber Co. v. United States, supra*; the

Government was given sixty days to file a reply brief, so there would have been no prejudice from consideration of the issue; no refinement or clarification is required; and the matter was ripe for consideration by the Court of International Trade.[8]

Although it would be proper to remand this case to the court below for its determination on the Fifth Amendment due process issue, its decision would in all likelihood be appealed. Accordingly, we are persuaded that this court should decide the matter now in the interests of judicial economy and avoidance of any further delay in a case that the trial court described as one with a "14-year lifespan."

Appellant argues that "the Congress of the United States had not the legal authority or the power to confer upon the commission the right to make an affirmative determination based on an evenly divided vote," and that imposition of dumping duties by an evenly divided vote of the Commission constituted taking of property without due process of law.[9] It declares that enactment of the tie vote provision in 19 U.S.C. § 160(a) "was a direct violation of the rights of the appellant and all other citizens of the United States secured for them under the constitution [sic] of the United States." It correctly points out that "the power of Congress is not absolute and without limit," quoting from *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 276, 15 L.Ed. 372 (1856) that Congress is not "free to make any process 'due process of law,' by its mere will." It concedes that "the constitution [sic] of the United States contains no requirement of majority rule," but contends that "the requirement of majority rule is well settled in the usages and the modes of proceeding of the English-speaking peoples" and that "the requirement of majority rule in all deliberative or representative bodies is inherent in the notion of Due Process of law and the law of the land." Appellant gratuitously asserts that "the legal vacuum around the concept of majority rule permits the inference ... that the rule is never abrogated."

Appellant further argues that a quorum is a condition precedent to doing business and that when this condition is fulfilled, "the operative rule then becomes that of majority vote." Thus, it theorizes that "in the function of a legislative body or commission the function of majority rule is a higher order or represents a greater value than the function of a quorum." From this it postulates that "if a quorum is a notion of constitutional proportion in our democratic scheme of things, then it necessarily follows that the concept of majority rule is of more than constitutional proportion ... among that order of things which are inherent in the concept of ordered liberty."

With respect to the last proposition, the short and complete answer is that it is beyond the scope of both appellant's Fifth Amendment due process argument and the question of whether the Court of International Trade should have considered that argument.

With respect to the remainder of appellant's arguments, appellant's main problem is that it identifies "our democratic scheme of things" with majority rule; whereas, it is apparent from the Constitution itself, on which appellant's due process argument is based, that majority rule is not an immutable ingredient in "our democratic scheme of things." The United States Senate itself, composed of two senators from each of the states,[10] is the most notable exception to majority rule in "our democratic scheme of things." The electoral college, composed of the number of electors

---

8. The impact of the tie vote provision is clearly substantial. Appellee has called to the court's attention thirty instances of tie votes of the Commission arising out of investigations under the Antidumping Act.

9. According to the Government, there has been no liquidation and, therefore, no dumping duty assessment and, thus, there has been no "taking of property." Moreover, appellant apparently overlooks that the regulatory scheme provided by Congress requires, first, a less-than-fair-value determination by the Secretary of the Treasury. *See Timken Co. v. Simon*, 539 F.2d 221 (CADC 1976).

10. U.S.Const. Art. 1, § 3, cl. 1; Amend. XVII.

equal to the number of senators and representatives from each state [11] is another. If election of the president should go to the House of Representatives, each state is entitled to but a single vote.[12] Of course, there are good reasons for such exceptions to majority rule in a republic.[13]

Similarly, legislative history of the tie vote provision of 19 U.S.C. § 160(a) compels the conclusion that it was enacted for good and sufficient reasons.[14] *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 125, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978). In his message to Congress in 1916, President Wilson suggested the creation of an investigative commission that would be free from favoritism toward any political party and capable of objectively considering the economic conditions of the country.[15] Congress responded in the Act to Increase the Revenue (Pub.L.No. 271, 39 Stat. 756, 795–98). Section 700 provided that no more than three of the six members, to be appointed by the President, could be from the same political party. In 1958, Congress enacted Public Law No. 85–630 (72 Stat. 583), which added a provision to section 201(a) of

the Antidumping Act stating that, for the purpose of that section, the Commission shall be deemed to have made an affirmative determination if the commissioners voting are evenly divided on the question. The Trade Act of 1974 (Pub.L.No. 93–618, 88 Stat. 1978, 2050) added a tie vote provision to the countervailing duty law in connection with a newly added injury determination provision. The Trade Agreements Act of 1979 (Pub.L.No. 96–39, 93 Stat. 144, 179) incorporated a tie vote provision in the new anti-dumping and countervailing duty laws. Thus, Congress has clearly recognized the possibility of a deadlock resulting from the provision for an equal number of commissioners from each major political party,[16] and the tie vote provision has been one answer to that problem.[17] In the case of the Antidumping Act, enacted for the benefit of United States manufacturers, the stated purpose of the tie vote provision was to provide additional deterrent strength to the law and greater certainty, speed, and efficiency in its enforcement.[18]

Accordingly, we hold that the tie vote provision of 19 U.S.C. § 160(a) does not

11. U.S.Const. Art. 2, § 1, cl. 2; Amend. XII.

12. *Id.*

13. Mr. Justice Harlan, in his separate opinion in *Whitcomb v. Chavis*, 403 U.S. 124, 167, 91 S.Ct. 1858, 1882, 29 L.Ed. 363 (1971), referred to "the fact that the scheme of the Constitution is one not of majoritarian democracy, but of federal republics, with equality of representation a value subordinate to many others, as both the body of the Constitution and the Fourteenth Amendment itself show on their face."

14. Appellant concedes that Congress has plenary power to regulate foreign commerce. *Buttfield v. Stranahan*, 192 U.S. 470, 492–93, 24 S.Ct. 349, 353–54, 48 L.Ed. 525 (1904). However, it contends that there is no rational relationship between the tie vote provision and the end sought by the legislation, citing *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). We do not agree for reasons that follow. Additionally, appellant has failed to make manifest that the tie vote provision violates the requirement of procedural due process because the hearing, while "at a meaningful time," was not "in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

15. J. Dobson, Two Centuries of Tariffs: The Background and Emergence of the United States International Trade Commission 87 (1976).

16. *See* Senate Comm. on Gov't Affairs, Study on Federal Regulation, Vol. IV, Delay in the Regulatory Process, 95th Cong., 1st Sess. 116 (1977).

17. Another answer, as in 19 U.S.C. § 1330(d)(1), is that in the case of a tie vote on the question under 19 U.S.C. § 2251 of serious injury, or threat thereof, from increased imports or on the question under 19 U.S.C. § 2436 of market disruption, the determination agreed upon by either side may be considered by the President to be the determination of the Commission.

18. S.Rep.No.1619, 85th Cong., 2d Sess. 2 *reprinted in* [1958] U.S.Code Cong. & Ad.News 3498, 3499. We note that appellant, in effect, argues that in this case a majority of 4–2 should have been required to make the injury determination. Such a two-thirds majority requirement could hardly be said to add deterrent strength, certainty, speed, and efficiency in enforcement of the antidumping law.

violate the due process clause of the Fifth Amendment to the Constitution.[19]

The judgment of the Court of International Trade dismissing appellant's action is *affirmed.*

RICH, Judge, concurring.

I agree with the result reached by the majority and with its discussion of the impetus behind congressional enactment of the tie-vote provision of 19 USC 160(a). I wish, however, to focus more specifically on the reasons why I believe the trial court should have ruled upon an issue raised for the first time in a post-trial brief, and on the reasons I vote to affirm on the due process, fifth amendment issue.

### The Post-Trial Brief Issue

Like the majority, I agree that "appellant's Fifth Amendment due process claims set forth in paragraphs 16 and 17 [of the complaint] are addressed only to evidentiary considerations and that the matters discussed for the first time in appellant's brief are wholly outside the pleadings." In deciding that the trial court should, nevertheless, have considered appellant's due process issue, the majority cites and discusses a number of United States Supreme Court and federal circuit courts of appeals cases. Each of these cases involved, however, the question of whether or not a circuit court or the Supreme Court would hear an issue that had been raised for the first time *on appeal.*

I do not believe that we should indicate to the trial court that it should have heard an issue raised for the first time in a post-trial brief before it because this court or a federal circuit court of appeals might have considered it, had it been raised for the first time at the *appellate* level.

I believe the trial court should have considered the due process issue only for the limited reasons set forth in that part of the majority opinion just preceding footnote 8,

stating that "the Government was given sixty days to file a reply brief, so there would have been no prejudice from consideration of the argument; no refinement or clarification is required; and the matter was ripe for consideration by the Court of International Trade." As further support for the "no refinement" rationale, I note that the constitutionality of this statute is to be determined "on its face," not as interpreted or as applied, and that no further facts needed to be developed.

### The Constitutional Issues

Although appellant asserts that majority rule is "Necessarily * * * among that order of things we call 'fundamental'," it is my belief that the economic legislation before us, enacted pursuant to the federal government's plenary power over regulation of foreign commerce, infringes no such right and is to be held invalid as violative of the due process clause of the fifth amendment only if it is wholly arbitrary or capricious. I would affirm in this case, given the congressional motivation discussed by the majority, simply because appellant has failed to demonstrate that the tie-vote provision of § 160(a) bears no reasonable relationship to, or has no rational basis in, the legitimate end sought by Congress. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 125, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978); *United States v. Carolene Products Co.,* 304 U.S. 144, 152, 153, 58 S.Ct. 778, 783, 784, 82 L.Ed. 1234 (1938).

---

19. In *Voss Int'l Corp. v. United States,* —— CCPA ——, C.A.D. 1253, 628 F.2d 1328 (1980), this court held that a valid affirmative determination of injury for purposes of 19 U.S.C. § 160(a) resulted from an evenly divided vote in a quorum of four members of the Commission voting, with a fifth member present but abstaining. The constitutionality of the tie vote provision was neither raised nor considered.