**CLIPPER BELT LACER CO., INC.,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

No. 90–1338.

United States Court of Appeals,
Federal Circuit.

Jan. 17, 1991.

Edmund Maciorowski, of Edmund Maciorowski, P.C., Detroit, Mich., argued, for plaintiff-appellant.

Mark S. Sochaezewsky, Commercial Litigation Branch, Dept. of Justice, New York City, argued, for defendant-appellee. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office.

Before RICH, NEWMAN and RADER, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the judgment of the United States Court of International Trade in *Clipper Belt Lacer Co. v. United States*, 738 F.Supp. 528 (CIT 1990), affirming the classification by the United States Customs Service (Customs) of imported metallic belt fasteners as "articles of iron or steel, not coated or plated with precious metal" under Item 657.25, Tariff Schedules of the United States (TSUS). Familiarity with the

extensive opinion of the trial court will be presumed. We affirm.

Appellant, Clipper Belt Lacer Co., is a purveyor of a wide variety of fasteners for splicing or joining abutting belt ends of many kinds, sizes, and uses. The merchandise here involved consists of two varieties of heavy-duty fasteners, identified as the "Ultra" and the "Mato," collectively referred to as the Mato Line, which are used principally by the mining industry for joining together the ends or sections of conveyor belts used in belt conveyors for transporting heavy materials such as coal and ore. These conveyors may be four feet or more in width and from a thousand yards to two miles long. Necessarily, the belts are made of sections. When completed, such belts are, of course, endless and are carried on the guides, rollers, and driving pulleys of the conveyor machinery and moved by powerful motors. For reasons which will appear, the trial court found it useful to distinguish between belt conveyors, i.e., the complete apparatus, and con-veyor belts, which are, of course, a necessary element of the complete conveyors.

The "Ultra" belt fasteners are made of steel wire and the heavier "Mato" fasteners of sheet steel and comprise multiple units to be clinched into the end of a belt or belt section so as to provide a series of metal loops across the edge of the whole belt end. Belt sections are then joined together in a flexible manner by overlapping the loops on one section with those on an adjoining section and passing a "pin," which is a braided piece of wire, which may be externally covered or armored, through the overlapping loops to form a transversely flexible hinge joint. The trial court opinion contains further detailed description and illustrations.

■ Customs' classification under TSUS Item 657.25 carries an *ad valorem* duty of 5.7%. Clipper's protest has the usual objective of getting a classification with a lower duty to which end it asserts the following three allegedly more specific TSUS provisions (emphasis throughout ours):

Schedule 6—METALS AND METAL PRODUCTS

Part 3—Metal Products

Subpart D (1983): Nails, Screws, Bolts and Other Fasteners; Locks; Builders' Hardware; Furniture, Luggage and Saddlery Hardware.

[A] Item 646.20  Staples in strip form ............................... 0.9% ad val.

Brads, nails, spikes, staples and tacks, all the foregoing, not described in the foregoing provisions of this subpart, of base metal:

of iron or steel

[B] Item 646.32  Of two or more pieces ............................ 2.3% ad val.

Part 4—Machinery and Mechanical Equipment

Subpart B (1983): Elevators, Winches, Cranes and Related Machinery; Earth Moving and Mining Machinery

[C] Item 664.10  Elevators, hoists, winches, cranes, jacks, pulley tackle, belt conveyors, and other lifting, loading or unloading machinery, and conveyors, all of the foregoing and parts thereof ........................

....

Parts of the foregoing:

....

Other .................................... 2.0% ad val.

It is thus seen that appellant relies on two separate "staples" provisions, [A] and [B], and one "parts" provision. It is impossible, because of vacillations in its argu-

ments and briefs, here and in the trial court, to say what its first choice is, but we will presume it is [A] which has the lowest duty. Whether [A] or [B], however, the imports in either of these two claims must be "staples" within the common meaning of the term since no other meaning has been established as intended by Congress. *See Trans–Atlantic Co. v. United States*, 60 CCPA 100, 471 F.2d 1397 (1973). The trial court exhaustively considered the characteristics of the imports and the meaning of the term "staples," devoting about seven pages of its typed opinion to this single question, concluding that the imports are not staples and therefore not classifiable under either Item 646.20 or Item 646.32. The evidence of record supports its conclusion, with which we agree. We therefore affirm that aspect of its decision. We find nothing in appellant's brief tending to show that the trial court's reasoning on this score was flawed.

■ Appellant's remaining contention, listed by the trial court as its "Third Alternative Claim," but apparently put forward on appeal to us as its principal contention, is that the imported belt fasteners are properly classifiable as parts of belt conveyors under Item 664.10, [C] supra. The literalistic logic of the argument is that Item 664.10 contains a specific provision for "parts" of "belt conveyors" and that when the fasteners are put to use to fasten the segments of conveyor belts and the completed belts are assembled in the conveyor, then the imported fasteners squarely meet the words of Item 664.10 as parts of belt conveyors. However, there are additional words which must be considered.

TSUS Item 664.10, as shown above, falls in Part 4 of Schedule 6. Part 4 contains an interpretative Headnote 1. It reads:

*Part 4 Headnotes*
1. This part does not cover—

. . . .

(ii) belts and belting

(v) articles and parts of articles specifically provided for elsewhere in the schedules.

The counter logic to appellant's claim [C] is well set forth in the Government's brief:

Since Congress clearly intended by virtue of Headnote 1(ii) to exclude belts and belting from classification as parts of conveyors[,] it is logical to conclude that Congress also intended to exclude parts of belts from classification as parts of a conveyor, as such parts only become parts of conveyors *after* first becoming parts of belts, which requires that they be solely or chiefly used as such. See General Interpretative Headnote 10(e).

While it is undisputed that conveyor belts are necessary for the operation of conveyors, they are nonetheless not classifiable as parts of conveyors. Similarly, a part of the belt is also precluded from such classification. Thus, assuming, for purposes of argument, that the belt fasteners are factually parts of conveyors, they are nevertheless precluded from classification under item 664.10, TSUS, by the exclusionary headnote.

Essentially, that is the reasoning of the trial court which first considered whether the fasteners are parts of belt conveyors or parts of conveyor belts. After reviewing relevant case law, the court concluded that the fasteners are parts of belts, not parts of conveyors. It next considered whether Headnote 1(ii) operates to exclude those belt parts from classification in Part 4, as it clearly excludes "belts and belting." The court concluded that it does, reasoning by analogy to similar holdings involving other exclusionary headnotes in two cases, primarily, *Border Brokerage Co. v. United States*, 68 Cust.Ct. 7, C.D. 4325, 349 F.Supp. 1011 (1972) and *C.S. Emery & Co., W.A. Gleason v. United States*, 57 Cust.Ct. 217, C.D. 2767 (1966), cited therein. Appellant seeks at some length to distinguish these cases on the ground of differences in the headnote wordings and, of course, disagrees with the trial court's conclusion that Headnote 1(ii) to Part 4 excludes the fasteners, which are parts of the belts, from classification as parts of conveyors. In concluding its extensive argument on this point, appellant seeks to pose the question as whether "as a matter of law" the fasteners are *described* "by TSUS item 664.10." That, however, is not the question because,

of course, they are, literally. The question is whether, notwithstanding their inclusion in Item 664.10 which the Government admits "factually," or at least assumes arguendo, classification of the fasteners therein is prohibited by the headnote. We agree with the trial court that classification under Item 664.10 is so prohibited. We need not discuss the cases because we are not bound by Customs Court decisions. It being a question of law, as appellant says, our review is de novo.

If, as the headnote makes perfectly clear, belts and belting, for whatever purpose used, are *not* to be classified under Part 4 of Schedule 6, it seems to us to make good sense to assume, since appellant has produced no evidence to the contrary, that fasteners which are a part of the belt system are not to be classified as parts of the conveyor which consists of mechanical machinery having an entirely different character from flexible belting.

The judgment of the Court of International Trade is therefore

AFFIRMED.