**TECHNICOLOR VIDEOCASSETTE, INC., Plaintiff–Appellee,**

**v.**

**The UNITED STATES, Defendant–Appellant.**

**No. 95–1548.**

United States Court of Appeals, Federal Circuit.

July 19, 1996.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Oct. 11, 1996.

Leonard M. Fertman, Leonard M. Fertman, P.C., Los Angeles, California, argued, for plaintiff-appellee.

Saul Davis, Senior Trial Counsel, Civil Division, International Trade Field Office, Department of Justice, New York City, argued, for defendant-appellant. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Also on the brief was Laura R. Siegel, Office of Assistant Chief Counsel, U.S. Customs Service, New York City.

Before MAYER, MICHEL, and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge MICHEL. Dissenting opinion filed by Circuit Judge MAYER.

MICHEL, Circuit Judge.

This tariff case is before us for the second time in as many years. The government once again appeals, this time from the July 17, 1995, remand decision of U.S. Court of International Trade, in which the court adhered to its first decision in favor of plaintiff Technicolor Videocassette, Inc. (Technicolor).[1] In both decisions, the trial court concluded, over the objection of the U.S. Customs Service (Customs), that the empty cassette housings imported by Technicolor are properly classified as "parts and accessories of" videocassette recorders (VCRs) under subheading 8522.90.9080 of the Harmonized Tariff Schedule of the United States (HTSUS). The appeal was submitted for decision after oral argument on May 7, 1996. Because the trial court did not err in concluding that *Clipper Belt Lacer Co. v. United States*, 923 F.2d 835, 9 Fed. Cir. (T) 55 (Fed.Cir.1991), does not control the case at bar, we affirm.

## BACKGROUND & ANALYSIS

The legally operative facts are not in dispute. Technicolor imports "V–O cassettes," or empty magnetic tape cassette housings. The empty housings consist of a plastic shell, two plastic internal spools, and non-magnetic leader tape. Importantly, the housings contain no magnetic tape medium when imported; it is only after importation that they are sold to tape loading or duplicating firms for loading with either blank or pre-recorded magnetic tape. Once the tape medium has been loaded, the resulting product can be used with a VCR or camcorder, or for storage of computer data. Finally, the plastic shell has many subparts, such as a door and latches, that protect the tape medium and position it properly within the mechanism that uses the tape. In other words, the devices that use this cassette technology cannot function with magnetic tape and reels alone; the cassette housing interacts with a device, facilitating the proper use of the tape medium.

Customs classified the housing as "other articles of plastics ... other" under subhead-

ing 3926.90.90 of the HTSUS, with a duty rate of 5.3% *ad valorem*. Technicolor protested the classification, contending that the housings are properly classified as "parts and accessories of" VCRs under subheading of 8522.90.9080 of the HTSUS, with a more favorable duty rate of 3.9% *ad valorem*.

During the first proceeding in the Court of International Trade, in October 1993, the trial court heard testimony from three witnesses—two experts for Technicolor and one expert for the government. The trial court's task was to determine whether, on the basis of the evidence offered regarding the construction and functioning of the imported cassette housing, Technicolor had carried its burden of overcoming the presumption of correctness in Customs' favor, thereby demonstrating that the imports were "parts and accessories of" VCRs. Resorting to the "common and commercial meaning of the term[s] part and accessory," the trial court recast Technicolor's burden as that "of demonstrating that the V–O Cassette is an integral component of the VCR, without which the VCR could not operate in its intended capacity." *Technicolor Videocassette, Inc. v. United States*, 846 F.Supp. 1005, 1007–08 (Ct. Int'l Trade 1994). The trial court held in Technicolor's favor, reasoning as follows:

Plaintiff has demonstrated that the V–O Cassette is a complex device with approximately twenty distinct components. Certain of these components are highly specialized and must operate precisely as designed or the VCR will not function. The door itself, for example, pushes against the internal mechanisms of the VCR and alerts the VCR that a tape has been inserted, so that the VCR may engage the cassette transport mechanism. The V–O Cassette also contains a "window" which allows light to enter the cassette and signal the clear leader tape that the medi[um] is nearing the end. Without this "window," light would not pass into the cassette, thereby hampering the function of the VCR.

In sum, it would not be possible to operate the VCR as intended simply with me-

---

1. The first decision is reported at 846 F.Supp. 1005 (Ct. Int'l Trade 1994), and the second decision is reported at 896 F.Supp. 1220 (Ct. Int'l Trade 1995).

dia but no cassette in which to house it. If the V–O Cassette is defective in some way and medi[um] is inserted into that cassette, the VCR will not function properly and may become damaged. In order to operate the VCR in its intended fashion with media and reels, but no cassette shell, the VCR itself would have to be redesigned. Defendant's expert witness agreed that, without the V–O Cassette housing, the VCR could not perform its function.

*Id.* at 1008 (record citations omitted).

The government appealed from this adverse decision. We vacated the trial court's decision and remanded the case for further proceedings on the following narrow question:

On appeal to this court, the Government's primary argument is the so-called "part-of-a-part" argument. The Government asserts that complete video cassettes (*i.e.,* those that include magnetic tape) are excluded from the tariff category of "parts and accessories" of VCRs since such cassettes are explicitly provided for in specific provisions of the tariff schedule (headings 8523 and 8524). If complete cassettes cannot be classified as parts or accessories of VCRs, the Government argues that parts or accessories of those complete cassettes (*i.e.,* the V–O Cassettes, which do not contain magnetic tape) cannot be classified as parts or accessories of VCRs. The Government cites *Clipper Belt Lacer Co. v. United States,* 923 F.2d 835, 837–38, 9 Fed. Cir. (T) 55, 57–59 (Fed.Cir.1991), and *United States v. American Express Co.,* 29 C.C.P.A. 87, 1941 WL 4604 (1941).

The whole of this argument was not raised before the Court of International Trade. Although this court ordinarily does not consider issues raised for the first time on appeal, *see Finch v. Hughes Aircraft Co.,* 926 F.2d 1574, 1576–77, 17 USPQ2d 1914, 1916 (Fed.Cir.1991); *Border Brokerage Co. v. United States,* 68 C.C.P.A. 32, 646 F.2d 539, 543 (1981), Technicolor did not object when the Government raised the "part-of-a-part" issue in its briefs to this court. Therefore, we hold that this argument is still viable. However, because of the Court of Interna-

tional Trade's expertise in analyzing the tariff schedule, it would be prudent to remand this case to that court in order for it to consider the "part-of-a-part" argument in the first instance. *Cf. International Union v. Brock,* 783 F.2d 237, 251 (D.C.Cir.1986) (legal issue not evaluated by lower court remanded for further briefing and arguments).

*Technicolor Videocassette, Inc. v. United States,* No. 94–1300, 1995 WL 23775, at *1 (Fed.Cir. Jan. 23, 1995).

On remand, the trial court took up an analysis of the government's new argument, an argument grounded on its reading of our decision in *Clipper Belt.* First, the court summarized the government's "part-of-a-part" argument as follows:

Defendant asserts that complete video cassettes (cassette housings loaded with magnetic tape) are excluded from the tariff category of "parts and accessories" of VCRs since such cassettes are explicitly provided for in specific provisions of the tariff schedule ... as media and are excluded from classification as a part or accessory of a VCR pursuant to Chapter Note 6 to Chapter 85. If complete cassettes cannot be classified as parts or accessories of VCRs, defendant argues, nor can parts or accessories of those complete cassettes ([such as] empty cassette housings) be classified as parts or accessories of VCRs. For support, defendant cites *Clipper Belt Lacer Co., Inc. v. United States,* 923 F.2d 835 (Fed.Cir.1991), where the Federal Circuit found that belt fasteners could not be classified as parts of belt conveyors because the belt fasteners could only become parts of belt conveyors after they became parts of belting.

*Technicolor Videocassette, Inc. v. United States,* 896 F.Supp. 1220, 1222 (Ct. Int'l Trade 1995). After rehearsing the relevant findings from its first decision, the court adhered to its view that "the empty V–O cassette is a part or accessory of the VCR and ... is distinct from media (the magnetic tape)." *Id.* at 1223. According to the trial court, the condition of the housings at the time of importation—namely, empty—fatally

undermines the government's contention that the cassettes are parts of completed media:

> The [imported] empty cassette is a distinct commercial article which is joined with media (magnetic tape) to form a composite good, which, taken as a whole, may be considered media. In the case of a cassette loaded with tape, the loaded tape is classified as media because it is the tape (media) which provides the "essential character" of the composite video cassette as a whole, pursuant to General Rule of Interpretation 3(b).[2] This Court emphasizes, however, that this is not the situation at hand. The imported empty video cassette housings alone are not media or parts of media.

*Id.* Having found that the empty cassettes are not part of completed media for tariff purposes, the court rejected the government's analogy of the instant case to the facts of *Clipper Belt.* Specifically, the court reasoned that, whereas the imported fasteners in *Clipper Belt* "became parts of the belt" by connecting lengths of belting and did not "interact with the belt conveyors" on which the belting was placed, "the V–O cassettes are not part of media, but directly interact with the VCR and are necessary for the VCR to function." *Id.*

The government appeals from the trial court's decision, contending that the trial court erred in concluding that the case at bar is not controlled by our decision in *Clipper Belt.* Specifically, the government argues that "[w]here the part in issue (here, the housing) is merely part of another part (here, the complete videocassette), it is not classifiable as part of the whole (here, the VCR) if the complete part (here, the complete videocassette) is excluded from classification as part of the whole (here, the VCR)." The government's appeal ultimately turns, then, on the success of its attack on the trial court's finding that the imported empty housing is *not,* in fact, "merely part of another part." Technicolor contends, in response, that the trial court properly found that the "cassettes are not 'parts' of media, but are

combined with media *after importation* to form a composite good (a good consisting of two components), which is classified for *tariff purposes* as media because the media provides the essential character of the completed good."

■■■ While the definition of a particular tariff category presents a question of law, reviewed *de novo,* the question whether a particular item falls within that category is one of fact, reviewed for clear error. *Hasbro Indus. v. United States,* 879 F.2d 838, 840, 7 Fed. Cir. (T) 110, 112 (Fed.Cir.1989). As the Supreme Court has noted, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

Our decision in *Clipper Belt* concerned the proper tariff classification of heavy-duty fasteners "used principally by the mining industry for joining together the ends or sections of conveyor belts used in belt conveyors for transporting heavy materials such as coal and ore." 923 F.2d at 836, 9 Fed. Cir. (T) at 56. Customs classified the fasteners as "articles of iron or steel, not coated or plated with precious metal." *Id.* at 835, 9 Fed. Cir. (T) at 56. The Court of International Trade affirmed Customs' classification, rejecting Clipper Belt's contention that the fasteners ought instead to be classified under the subheading provided for "parts" of "belt conveyors." The trial court found that the imported fasteners were parts of the belting they were used to join rather than parts of the conveyor machinery on which that belting was placed. We affirmed that decision on appeal, reasoning that "fasteners which are a part of the belt system are not to be classified as parts of the conveyor which consists of mechanical machinery having an entirely different character from flexible belting." *Id.* at 838, 9 Fed. Cir. (T) at 59. Critical to our conclusion, then, was the flexible character of the fasteners, a character they shared with the belting of which they were found to

---

**2.** General Rule of Interpretation 3(b) of the HTSUS provides, in relevant part, that "composite goods ... made up of different components ... which cannot be [otherwise] classified ... shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable."

have become a part. It is in this connection that the trial court observed, in the instant case, that the fasteners did not "interact with the belt conveyors"; the fasteners were flexible like the belting, rather than mechanical like the conveyor on which the belting was placed.

■ In the case at bar, by contrast, we confront the finding, made after due consideration of testimony from both parties' mechanical experts, that the imported cassettes housings are of complex design, having moving parts and other features designed to interact mechanically with corresponding features internal to the devices that use the housings once they are filled with magnetic tape medium. We also confront the further finding that the housings, due to their complexity and the predominating role of magnetic tape when the latter is combined with such a housing, do not fall within the tariff provision directed to composite media goods, *i.e.*, completed, tape-containing cassettes. We cannot conclude, in view of the testimony before the trial court, that either of these critical findings is clearly erroneous. Given these findings, we can only conclude, as the trial court did, that our decision in *Clipper Belt* simply does not control the outcome of the case at bar. Whereas the imported fasteners were parts of belting and therefore not parts of conveyors, the imported housings are not part of media and therefore are not precluded from being parts of VCRs.

Finally, the government makes additional secondary arguments in favor of its position that the cassette housings cannot be classified under subheading 8522.90.9080 of the HTSUS. For example, the government contends that "the symmetry of the HTSUS provisions for media, and for the articles which use the media, demonstrate[s] a uniform congressional intent that media and their parts be excluded from classification as parts of the articles that use the media." This argument, like the argument from *Clipper Belt*, trades on a mistaken assumption that the empty housings are parts of media and is thus unpersuasive. After careful consideration of this and other arguments made by the government, we remain unpersuaded that the trial court misconstrued the scope of

subheading 8522.90.9080 or clearly erred in categorizing the cassettes as within that provision.

## CONCLUSION

The trial court found that the imported housings are not parts of completed media for purposes of the HTSUS. It did so based, in part, on the subsidiary findings regarding the mechanically complex features of the empty housings, as well as the interaction between those housing features and the corresponding mechanical features internal to the devices that use completed cassettes (*i.e.*, housings containing magnetic tape). The trial court then concluded that, in light of these findings, our decision in *Clipper Belt* does not apply so as to require that subheading 8522.90.9080 of the HTSUS be defined so as to exclude the imported housings. Discerning neither clear error in the court's findings nor error in its conclusion regarding the applicability of *Clipper Belt*, we affirm.

*AFFIRMED.*

MAYER, Circuit Judge, dissenting.

Customs's classification of imported merchandise is presumed to be correct, and the party challenging the classification has the burden of overcoming this presumption. 28 U.S.C. § 2639(a)(1) (1994); *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed.Cir.1994). To decide whether an importer has overcome this presumption, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed.Cir.1984). "Ordinarily it will be difficult to meet this burden of proof without proposing a better classification." *Id.*

In concluding that Technicolor met its burden, the Court of International Trade focused on the complexity of the V–0 cassettes and emphasized that "the V–0 cassette is an integral component of the VCR, without which the VCR could not operate in its intended capacity." However, the fact that V–0 cassettes are complex and are necessary for VCRs to function does not overcome the

government's argument that these devices fall within note 1(c) to section XVI, which excludes "[b]obbins, spools, cops, cones, cores, reels or similar supports of any material" from classification under that section. This exclusionary note does not clearly delineate those devices which should and should not be included, but the government interprets it broadly enough to encompass V–0 cassettes, reasoning that the V–0 cassettes essentially perform like functions to the listed items and that their mechanical complexity is not determinative. Thus, notwithstanding the fact that the V–O may plausibly fit the definition of "parts of VCRs," the government's preferred classification is not inferior by comparison and comports with the relevant portions of the classification scheme. Accordingly, I would reverse.