UNITED STATES v. AMERICAN EXPRESS Co. (No. 4333) [1]

United States Court of Customs and Patent Appeals, June 9, 1941

*Charles D. Lawrence*, Acting Assistant Attorney General, (*Joseph E. Weil*, special attorney, of counsel) for the United States.

*Eugene R. Pickrell* for appellee.

[Oral argument April 16, 1941, by Mr. Lawrence and Mr. Pickrell]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, holding certain "paper strips" or "film separators" dutiable as parts of cameras, not specially provided for, at 20 per centum ad valorem under paragraph 1551 of the Tariff Act of 1930 as claimed by the importer (appellee), rather than as manufactures of paper, not specially provided for, at 35 per centum ad valorem under paragraph 1413 of that act as assessed by the collector at the port of New York.

[1] C. A. D. 175.

The pertinent parts of the paragraphs in question read:

PAR. 1413. * * * manufactures of paper, or of which paper is the component material of chief value, not specially provided for, all the foregoing, 35 per centum ad valorem * * *.

PAR. 1551. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem: *Provided,* That if the photographic lens is the component of chief value of the camera or of the part in which it is imported, such camera or part, including the photographic lens, shall be dutiable at the rate applicable to such photographic lens when imported separately; photographic dry plates, not specially provided for, 20 per centum ad valorem; photographic films, sensitized but not exposed or developed, of every kind except motion-picture films having a width of one inch or more, 25 per centum ad valorem * * *.

The "paper strips" or "film separators," introduced in evidence as Collective Illustrative Exhibit B, are completely manufactured articles composed of black paper "not sensitized." Each strip has a rectangular base and an upper portion or tab. The tab portion is somewhat longer and narrower than the base and is rounded at its upper end. The base is designed to have a sensitized film of the same width and length attached thereto.

It appears from the record that the involved strips are used in and as parts of a so-called "film pack," which comprises a piece of cardboard of the size and shape of the sensitized films and the base portion of the film separators, twelve film separators (each having a sensitized film attached thereto), a safety cover of the same material and shape as the film separators, and a metal container which encloses the cardboard, the films, and the film separators. Although the metal container was not clearly described by the witnesses, it appears from such testimony as there is on the subject and from two exhibits, introduced in evidence as Collective Illustrative Exhibit A and Collective Exhibt 1, that the container comprises a flat rectangular metal frame, closed on one side and open on the other, a metal slide designed to fit in the metal frame, and a metal cap designed to fit over one end of the frame. The metal slide and the cardboard form the innermost portion of the film pack, and the films and film separators are apparently folded around one end thereof. A portion of the tab of the safety cover and of each of the film separators extends outwardly through a specially designed opening in the metal cover. The film separators and the films and the safety cover therefor are so arranged in the metal container that each film is protected from the light. A camera with which a film pack is used is supplied with a film pack adapter for holding the film pack. In order that the first film may be placed in position to be exposed, the tab on the safety cover is pulled out of the film pack to a point indicated thereon and torn off. After the first film has been exposed, it is pulled around to the rear of the film pack by pulling the tab of the film separator to which it is attached out of the film pack to a point indicated thereon (where the tab is

torn off) and the next film is then in position to be exposed. This operation is continued until each of the twelve films has been exposed, at which time the piece of cardboard occupies the front or open side of the film pack and each of the exposed films is protected by the base of the film separator to which it is attached. It further appears from the record that unless the films in the film pack are separated and protected by the film separators, successive pictures will be superimposed upon each other. After all of the films in the film pack have been exposed, the film pack is removed from the camera, the films and film separators are removed from the metal container, and the container and the remaining portion of the film separators are discarded.

It will be observed from what has been said that the film separators serve not only to protect the photographic films in the film pack, but also function, in the manner hereinbefore described, to remove an exposed film from its exposed position to the back of the film pack.

It appears from the evidence that film packs are not bought and sold with cameras, but are dealt in as separate commercial articles.

The witness Hamilton C. Eastman, office manager of the New York City office of the Agfa Ansco Corporation, the ultimate consignee of the involved merchandise, called as a witness by appellee, testified on cross-examination as follows:

X Q. *Film pack means a pack of film, doesn't it?*—A. *The common use of the word; yes.*

X Q. A pack of film would be the film with the photographic paper, wouldn't it?—A. *The common use of it is to include the entire thing; the film, the paper, and the metal container.*

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

X Q. Isn't the primary function of the metal frame as a container for the film?—A. That is the function of the frame is to hold the film?

X Q. Isn't that correct?—A. That is part of its function.

X Q. What other function does it serve?—A. To also have a place so the container can be put in the camera.

X Q. After you used a film pack, what did you do with the metal frame?—A. Threw it away.

X Q. *Can you load film in the pack so the paper, or the opaque paper, can be wound in this metal frame, and reuse it?*—A. *I can't do it; no.*

X Q. *Have you ever known of anybody else to do it, except in a factory?*—A. *No.*

X Q. Now, the film pack is the photograph film, isn't it; for the most, isn't that what it is?—A. You mean the film in a film pack?

X Q. The film pack, itself, is the photographic film, isn't it?—A. No.

X Q. What is it?—A. The film pack?

X Q. Yes.—A. *It is a combination of the photograph film and the container.*

X Q. And the container?—A. Yes.

X Q. Are you an importer?—A. No. Myself or the company?

X Q. Yourself?—A. No.

X Q. Have you ever imported film packs and the parts?—A. No.

X Q. *Are you employed or have you been employed by a firm that imports film packs?*—A. Yes. [Italics ours.]

It further appears from the evidence that some cameras are so constructed that either sensitized plates or film packs may be used in the taking of pictures, but that one or the other of those articles is indispensable in the use of such cameras, that is to say, such cameras cannot function for their intended purpose without the use of either a photographic plate (which is inserted in a plate holder) or a film pack and adapter; that the film pack adapter is sold with such cameras; that when a sensitized or photographic plate is used instead of a film pack the plate must be inserted in the plate holder in a "dark room" and the plate holder and the plate are then inserted in the camera; and that when such a plate is used, the plate holder takes the place of the adapter which is used to hold the film pack.

On the record thus presented, the trial court held that the involved film separators were integral and component parts of cameras and dutiable as such under paragraph 1551, *supra*.

It is here contended by counsel for the Government that the film used in the camera "by being used only once becomes converted into a 'product' of the camera"; that the involved film separators are, at the most, elements "used in the production of the film pack," or are parts of photographic films; that "film separator paper is used as a material in the manufacture of a photographic film pack"; and that a film pack is similar for tariff purposes to typewriter paper used in a typewriter, "the material placed in a sewing machine, the cartridge in a revolver or a rifle, or the gasoline in a motor car." Counsel state in their brief that "It is admitted that certain cameras cannot function properly without a film pack or glass plate. It is equally true that an embroidery or sewing machine cannot function without cloth or material placed in it, nor a typewriter without paper, a phonograph without a needle, a camera without film, a revolver or rifle without cartridges, nor a motor car without gasoline. Therefore, it becomes evident that although certain articles essential to the operation of the main device are parts thereof, it does not follow that all materials essential to its operation are 'parts' thereof." It is further contended by counsel for the Government that film packs are not integral, constituent, or component parts of cameras within the pronouncements of this court in the cases of *United States* v. *Gennert, Inc.*, 18 C. C. P. A. (Customs) 453, T. D. 44701, and *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, and that as the involved film separators are integral parts of film packs they are not dutiable as integral parts of cameras.

It is contended by counsel for appellee that the involved film separators are completely manufactured articles and *are integral parts of film packs; that a film pack is an integral part of certain types of photographic cameras;* that such cameras cannot function without the use

therewith of a film pack or a sensitized plate; that the use of the involved film separators in film packs is not optional but is absolutely essential to the use of a film pack in a camera; that if "paper-makers' felt" imported in the form of "endless belts" for use on a Fourdrinier paper-making machine is an integral part of such machine, as held by this court in the case of *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, the involved film separators are integral parts of cameras; that "In principle the instant merchandise is the same as the Leica spools and cartridges which were the subject of *Agfa Ansco Corp. et al.* v. *United States*, T. D. 48325 the appeal from which was dismissed [upon stipulation of counsel for the parties] (24 C. C. P. A. 474, T. D. 48609)," wherein it was held by the United States Customs Court, citing as authority the decision of this court in the case of *Decorated Metal Mfg. Co. (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 140, T. D. 40061, that the Leica spools and cartridges there involved were integral parts of cameras and dutiable as such under paragraph 1551, *supra*.

In its decision in the *Agfa Ansco Corp. et al.* case, *supra*, the court, referring to the testimony of record, said:

The latter [referring to the witness Hamilton C. Eastman, who testified in the instant case] testified that Exhibit 1 was known as a Leica cartridge and Exhibit 2 as a spool on which the Leica film is wound and placed inside the Leica cartridge before either of them is placed within the camera. Explaining precisely how these cartridges and films are used, and employing for the purpose the Leica camera represented by Illustrative Exhibit A, the witness pointed out that the film is wound around the spool and then inserted in the cartridge, about six inches of the film protruding from the latter in order to facilitate the winding of the film on the so-called "take-up spool." As the film is exposed it is wound around the take-up spool until the entire film is used. The film is then wound on to the original spool, which is removed from the camera. The exposed film which has thus been rewound from the original spool with the cartridge is sent to be developed, and after development the spool and cartridge are usually thrown away.

The court did not further describe the so-called "cartridges" there involved. It appears from the decision in the case, however, that the spools and cartridges were imported without films, the films being put on them after importation.

In the case of *Decorated Metal Mfg. Co. (Inc.)* v. *United States, supra*, it was held that typewriter ribbon spools "used to carry the rolls of print ribbon upon typewriters and other similar machines" were dutiable as parts of typewriters under paragraph 1542 of the Tariff Act of 1922.

In reply to one of the arguments presented here by counsel for the Government, counsel for appellee state in their brief that—

The chief argument seems to be that the film pack and the film itself are the same thing and that the film is not a part of the camera, but merely the material upon which the camera operates, as the paper inserted in a typewriter or the fabric

sewed in a sewing machine. It is respectfully submitted, however, that this is not a proper analogy. *The articles here in question are, together with the metal frame, the parts which support and protect the film. We are not concerned with the proper classification of the film itself. The paper and metal film pack parts closely resemble in their function the typewriter spools, which carry typewriter ribbon, or perhaps, the roll of the typewriter, which carries the paper.* [Italics not quoted.]

It is further argued by counsel for appellee that the mere fact that the involved articles are used but once and then discarded is not important in determining their classification, and, in that connection, counsel call attention to the decision of this court in the case of *Landay Bros.* v. *United States*, 5 Ct. Cust. Appls. 498, T. D. 35151, wherein it was held that phonograph needles which were discarded after having been used but once were parts of phonographs.

It clearly appears from the record, as argued by counsel for appellee, that the involved film separators are completely manufactured articles, designed for use and used, in the manner hereinbefore stated, for no purpose other than as integral parts of film packs. They are, therefore, integral, constituent, and component parts of film packs. See *Knauth* v. *United States*, 1 Ct. Cust. Appls. 422, T. D. 31499; *Jackson Co., et al.* v. *United States*, 2 Ct. Cust. Appls. 475, T. D. 32227; *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249; *Landay Bros.* v. *United States, supra; Richardson Co.* v. *United States*, 8 Ct. Cust. Appls. 179, T. D. 37289; *Decorated Metal Mfg. Co.* v. *United States, supra; United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434; *United States* v. *American Steel and Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States, supra; United States* v. *Sussex Print Works*, 17 C. C. P. A. (Customs) 257, T. D. 43686; *Steel, Inc.* v. *United States*, 24 C. C. P. A. (Customs) 423, T. D. 48872; *Steel, Inc.* v. *United States*, 28 C. C. P. A. (Customs) 77, C. A. D. 128.

It is not necessary that the involved film separators be physically attached to cameras in order that they may be properly classified as integral parts thereof. Nor are such film separators precluded from being so classified merely because sensitized plates may be substituted for film packs of which the separators are integral parts, it appearing that either sensitized plates or film packs are indispensable in the use of certain types of cameras in the taking of pictures. See the cases of *Steel, Inc.* v. *United States, supra.* The involved film separators being integral, constituent, or component parts of film packs, it would seem to be clear that they are dutiable as parts of cameras provided film packs are integral, constituent, or component parts of cameras. See *Richardson Co.* v. *United States, supra,* wherein it was held that certain carbureters which were integral parts of motors which, in turn, were integral parts of farm tractors—agricultural implements—were dutiable as integral parts of agricultural implements

under paragraph 391 of the Tariff Act of 1913, and *Landay Bros.* v. *United States, supra,* wherein,it was held that so-called "needles" for phonographs were necessary parts of reproducers, and that, as a reproducer was an indispensable and integral part of a phonograph, the "needles" were integral parts of phonographs. In other words, an integral part of an integral part of an article is an integral part of such article.

Generally speaking, a photographic camera is "An apparatus so arranged that the image can be thrown upon a surface [such as sensitized film] sensitive to light." See Webster's New International Dictionary. "Photography" is defined by the same authority as "The art or process of producing images on sensitized surfaces [sensitized film or the like] by the chemical action of light * * *. The modern dry plate is a glass plate (often replaced by a transparent flexible film) coated with an emulsion of silver salt, as the chloride, in gelatin. Exposure to light, as in the camera, causes a slight reduction of the silver salt, *forming a latent image.* The reduction is continued by the developer, and the image of finely divided silver becomes visible. The fixing agent removes any unchanged sensitive salt. From the negative thus obtained, in which the arrangement of light and shade is the reverse of that in the original, any number of positives may be printed on sensitized surfaces of paper, glass, etc." [Italics not quoted.]

When sensitized film is exposed in a properly focused camera, an invisible image of an object, which is referred to as a "latent image," is formed on the film, and by the use of a developing solution the "latent image" is "developed into a black negative representing the scene that was photographed." See "The Fundamentals of Photography" by C. E. K. Mees, D. Sc., published by the Eastman Kodak Co. of Rochester, N. Y.

The function of a photographic camera is to cause an image to be formed on properly exposed sensitized film. A film that has been exposed in a properly focused camera is; therefore, something more than sensitized film, it is a sensitized film with an image formed thereon by means of the camera. Accordingly, the function of a camera is to convert an unexposed sensitized film into an exposed film. The exposed film is, therefore, a product of the camera, not an integral part of such camera.

In the case of *American Express Co. et al.* v. *United States,* 4 Ct. Cust. Appls. 279, T. D. 33490, cited in the brief of counsel for the Government, it was held that a phonograph record was not a product of a phonograph, but, on the contrary, was an integral part thereof.

The distinction between a phonograph record and a photographic sensitized film is obvious. The phonograph does not produce the

record, but, by the use of the record; it is able to produce sound, musical or other, whereas a camera, in its operation, produces a "latent image" on a sensitized film.

In the Tariff Acts of 1913, 1922, and 1930 the Congress distinguished for tariff purposes between cameras and parts thereof and photographic films, sensitized but not exposed or developed. Photographic cameras and parts thereof were made dutiable at 15 per centum ad valorem under paragraph 380 of the Tariff Act of 1913, whereas photographic films, sensitized but not exposed or developed, were free of duty under paragraph 576 of that act. In paragraph 1453 of the Tariff Act of 1922 photographic cameras and parts thereof were made dutiable at 20 per centum ad valorem, whereas *photographic and moving-picture films*, sensitized but not exposed or developed, were made dutiable at "four-tenths of 1 cent per linear foot of the standard width of one and three-eighths inches, and all other widths * * * in equal proportion thereto." In paragraph 1551, *supra*, photographic cameras and parts thereof are dutiable at 20 per centum ad valorem, whereas "photographic films, sensitized but not exposed or developed, *of every kind except motion-picture films* having a width of one inch or more" are dutiable at 25 per centum ad valorem. [Italics ours.]

At page 1203 of the Summary of Tariff Information, 1921, prepared by the United States Tariff Commission for the use of the Committee on Finance of the United States Senate, relative to the provisions of paragraph 1451 of H. R. 7456, which later became paragraph 1453 of the Tariff Act of 1922, the Tariff Commission reported, among other things, that "Photographic films are generally furnished in rolls or packs of six or twelve films each and are used in the familiar hand camera," and that "An exposed film is one that has been used in the camera * * *."

At page 2132 of volume 2 of the Summary of Tariff Information, 1929, it is stated that "Sensitized films, not exposed or developed, are of two kinds: Cartridge or roll films, made in various sizes for hand cameras; motion picture films, usually 1⅜ inches wide, are used exclusively for motion pictures."

In the Supplement to Tariff Information on Items in Tariff Bill of 1930, dated April 3, 1930, prepared by the United States Tariff Commission for the use of the Congress, at page 548 it is stated, relative to paragraph 1551 of H. R. 2667, that *"Imports of sensitized films, 1925–1929* [includes reels, rolls, and packs]."

It is evident, therefore, that, at the time of the enactment of paragraph 1453 of the Tariff Act of 1922 and paragraph 1551 of the Tariff Act of 1930, the Congress was fully informed of the fact that photographic films, sensitized but not exposed or developed, *were furnished in rolls and packs for use in photographic cameras.* Accordingly, as the Congress has distinguished for tariff purposes between

photographic films, sensitized but not exposed or developed, and cameras and parts thereof, as hereinbefore stated, it is evident that it was not the intent of the Congress that photographic films of foreign manufacture, sensitized but not exposed or developed, should be dutiable as parts of cameras under paragraph 1551, *supra*, whether imported in packs or otherwise. That being so, film packs are not for tariff purposes integral parts of cameras. As the involved film separators are, as claimed by counsel for appellee, integral parts of film packs, it is evident that they are not integral parts of cameras within the purview of paragraph 1551, *supra*.

It is true that a camera cannot produce images on sensitized films in a film pack unless such films are arranged with the film separators in the manner hereinbefore described, nor can the camera function to produce images on sensitized films unless such films are, in some manner, arranged in the camera. It does not follow, however, that either the films or the film separators are parts of a camera.

When used in a camera, a film pack is operated as a separate and independent entity by the user of the camera. It is a film pack before it is inserted in the camera; it remains a film pack while it is being used in the camera; and, when all of the films therein have been exposed, it becomes a pack of exposed films and, as such, is removed from the camera.

The distinction between photographic films and the typewriter ribbon spools held to be dutiable as parts of typewriters in the case of *Decorated Metal Mfg. Co. (Inc.)* v. *United States, supra,* is so clear as to require no extended discussion. There the typewriter ribbon spools were used to carry rolls of print ribbon on typewriters. The typewriter *could not function as a typewriter* without the spools and the ribbon, both being necessary to the completion of the typewriter. It is true that a completed typewriter cannot perform its intended function without the aid of the material—typewriter paper—upon which it is designed to operate, but the typewriter paper does not, for that reason, become a part of the typewriter, it is, on the contrary, a mere material upon which the typewriter is designed to operate.

So, in the instant case, a camera, completed and ready to perform its intended function (the producing of a latent image on a sensitized plate or film) cannot perform such function in the absence of such plate or film. Nevertheless, when used, neither the plate nor the film becomes a part of a camera; it is the material upon which the camera operates.

We are of opinion, therefore, that the involved film separators are not integral, constituent, or component parts of cameras, and are not dutiable as such under paragraph 1551, *supra*.

For the reasons stated, the judgment is *reversed*.