UNITED STATES *v.* GARDEL INDUSTRIES (No. 4519) [1]

---

United States Court of Customs and Patent Appeals, January 7, 1946

*Paul P. Rao*, Assistant Attorney General (*Sybil Phillips* and *Alfred A. Taylor, Jr.*, special attorneys, of counsel), for the United States.

No appearance for appellee.

[Oral argument December 5, 1945, by Mr. Taylor, Jr.]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, Abstract 50247, overruling the action of the Collector of Customs, who classified two importations of merchandise from Canada as toys and assessed thereon a duty of 70 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, and sustaining appellee's protests on the ground that the merchandise was properly dutiable as manufactures of india rubber at 25 per centum ad valorem under paragraph 1537 (b).

The issue between the parties being the same in each of two actions instituted by appellee, the cases were consolidated for the purpose of trial and the decision rendered in the court below covers both importations.

The respective provisions of the statute so far as pertinent are—

PAR. 1513. * * * and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. * * *

PAR. 1537. * * * (b) Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for, 25 per centum ad valorem; * * *

The appellee produced the testimony of but one witness and the Government none.

The merchandise in question consists of certain small, flexible rubber-like molds for the fashioning of toy soldiers, tanks, etc.,

120

contained in cardboard boxes, as represented by collective exhibit 1 upon the cover of which is graphically and colorfully illustrated the figures of two children, a boy and a girl, engaged in the use of the molds. One child appears to be filling an up-turned mold with plaster of paris, the other to be coloring a completed figure. The box bears this inscription:

HO-PLA<br>
HOME PLASTIC CASTING SET<br>
for young and old<br>
MAKE YOUR OWN<br>
ART OBJECTS AND<br>
TOYS AT HOME

The respective invoices in both importations read—

Protest 107467–K:

Corrugated cartons containing 22 boxes each of #1 Ho-Pla 10 molds in each_____
12 10/12 dozen "Incomplete Toys" at $11.00 per dozen_____$141.17
Can Funds equivalent

Protest 109564–K:

Balance of shipment of Job-lot of Incomplete toys under export permit No. U/S 036358 File C 401–U2_____
3 Boxes Hopla (Home Casting Set) containing 48 small toy molds for plaster casting each_____
3 Boxes Hopla (Home Casting Set) containing 36 small toy molds for plaster casting each_____$20. 50

In addition to the foregoing exhibit and the descriptions in the official invoices, the evidence consisted of the oral testimony of Frederick F. Gardel, who made the following pertinent statements in response to questions of counsel and the presiding judge:

Direct examination by Mr. MANDELL:

Q. Mr. Gardel, what is your connection with the Gardel Industries?—A. I am a partner of Gardel Industries.

Q. And what is their business?—A. Selling and manufacturing of toys.

Q. And how long have you been in that business?—A. Two and a half years.

Q. And you manufacture a large variety of articles?—A. Not very large; just toys and some dolls and wooden toys.

Q. Are you familiar with playthings for children?—A. Yes, I am.

Q. Are you personally familiar with the importation of certain rubber molds that you purchased from the Plastic Novelties Manufacturing Company of 2049 Harvard Avenue, Montreal?—A. Yes, I am.

*　　*　　*　　*　　*　　*　　*

Q. But your importations of these molds are solely in connection with the manufacture of these figures and toys that your firm makes; is that correct?—A. That's correct.

Q. And have you ever, within your experience, seen articles like this used by children under 14 years of age as playthings?—A. I don't believe that children under 14 could be able to handle it.

Q. Why do you say that?—A. Because my own experience. I had people which I had to teach weeks before they could handle it properly in my factory. We had women and men in our factory which were between 25 and 40 years old and had to learn to—there's a certain trick of using those molds to be able to get the figure out of those molds. * * * Here the trick is to get it out and you have to—I don't know how to express myself. It's the way of handling by hand that you have to be quite——

Q. (Int'g.) Skillful?—A. Skillful to do it. It takes quite a time.

Presiding Judge OLIVER. Are there any written instructions that go with this set?

The WITNESS. We never sold that set. We sold the finished product. In Canada, as you see that box, they used to sell it for grown-ups; grown up boys and girls to do it, but experience has been that it didn't work out because they couldn't do it.

Presiding Judge OLIVER. Do I understand, Mr. Witness, that your testimony is that you never sold these molds as such?

The WITNESS. That's right.

Presiding Judge OLIVER. You use them to make the plaster of Paris figures?

The WITNESS. That's correct.

By Mr. MANDELL:

Q. And you sell the plaster of Paris figures?—A. I sell the plaster of Paris figures.

Q. And these articles that are in Collective Exhibit 1 are really part of your machinery in the manufacture of these plaster of Paris figures; is that correct?—A. I would call it more a die.

\* \* \* \* \* \* \*

By Mr. McDERMOTT:

X Q. Have you ever seen articles like Collective Exhibit 1 used outside of your own use in your own concern; outside of your own factory?—A. As I said before, I saw dentists using them and I saw different kinds of molds; gelatin molds with two-piece molds.

X Q. I mean the identical merchandise.—A. No; I didn't see anything.

X Q. Your only use has been confined to your own industry where you make toy plaster of Paris articles from articles like Collective Exhibit 1?—A. That's correct.

Mr. McDERMOTT. That's all.

Mr. MANDELL. I ask the Government to stipulate that if this article is not dutiable under paragraph 1513 it is properly dutiable as a manufacture and chief value of rubber.

(Discussion off the record.)

In customs litigation the importer has the two-fold burden of proving not only that the classification made by the Collector of Customs was erroneous but also show affirmatively that his own contention is correct. See *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C. C. P. A. (Customs) 150, 157, C. A. D. 227.

Appellant contends that appellee failed to establish prima facie that the involved molds were not chiefly used for the amusement of children and that the molds were manufactures of india rubber or of which that substance is the component material of chief value.

The issue between the parties therefore resolves itself into a question as to whether or not the testimony of the importer's witness was

**122**

sufficient to overcome the presumption of correctness attaching to the classification by the collector.

. The opinion in a.case previously decided by this Court provided in detail for procedure of the importer here in the discharge of the first part of its dual obligation:

> In view of the fact that the involved articles were classified by the collector as toys under the provisions of paragraph 1513, *supra*, and as a toy is defined in that paragraph as "an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development," the burden was upon the importer to establish by preponderance of the evidence that at or immediately prior to the date of importation the involved or like articles were not chiefly used for the amusement of children. *New York Merchandise Co., Inc., v. United States*, 27 C. C. P. A. (Customs) 117, 121, C. A. D. 72.

The determination of chief use not only involves a territorial or geographical consideration but also the quantity of the merchandise used. *United States* v. *S. S. Perry*, 25 C. C. P. A. (Customs) 282, T. D. 49395. In deciding that question, this court has held that the uncontradicted and unimpeached testimony of a single competent and credible witness may be sufficient to overcome the presumption in support of the collector's assessment and establish a *prima facie* case in favor of the protestant. *Catton, Neill & Co. (Ltd.)* v. *United States*, 11 Ct. Cust. Appls. 278, T. D. 39084; *United States* v. *Wanamaker*, 14 Ct. Cust. Appls. 285, T. D. 41888.

. The testimony of Gardel hereinbefore noted discloses that he is an interested witness engaged for a few years in the manufacture of a small variety of toys and some dolls in the city of New York, that the importations of merchandise here consisted of two comparatively small consignments of inexpensive rubber-like molds used by his firm solely in connection with the manufacture of the toy figures.

The witness testified further that in Canada the molds were sold by the box as exhibited to be used there by grown up boys and girls for their amusement "but that it didn't work because they couldn't do it"; that to make toys in these molds requires special skill and training and that children could not use them successfully: that the figures were rubber dies used by his firm for making the toys, and that he never saw the identical merchandise used outside of his own concern.

, Appellee's testimony is negated by the description of the goods in the official invoices which here have certain evidentiary value and by Collective Exhibit 1 which to the court, availing itself of common knowledge and experience, would ordinarily indicate that the molds were chiefly used for the amusement of children having a creative knack. The quality of the molds also indicates that they are not of the substantial type that would be used ordinarily as part of the machinery of a factory in the manufacture of the plaster of paris figures.

Furthermore, the witness Gardel, from his own statements, appears to be insufficiently qualified by experience and familiarity with commercial practice to give credible testimony as to the chief use of the merchandise throughout this country. His testimony relative to the use of the molds in his own restricted business, that he never saw the identical merchandise used outside of his own concern, and his failure to indicate clearly that any other concern or persons made use of the molds for a similar purpose, is not of the convincing character that is here required to overcome the presumption of the correctness of the collector's classification.

The evidence submitted by appellee is not sufficient to clearly establish that at or immediately prior to the date of the importation of the molds they were not chiefly used in this country for the amusement of children. Having failed to sustain its burden of proof as noted, it is unnecessary for the court to consider the further question raised here by the Government for the first time that the appellee did not prove affirmatively that the molds were manufactures of india rubber or of which that substance is the component material of chief value.

The judgment of the United States Customs Court is accordingly *reversed.*