Slip Op. 02-80

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: SENIOR JUDGE RICHARD W. GOLDBERG**

| | |
|---|---|
| BROTHER INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 00-01-00007 |

[Summary judgment ordered for plaintiff.]

Dated:    July 31, 2002

Barnes, Richardson & Colburn (Sandra Liss Friedman), for plaintiff Brother International Corp.

Robert D. McCallum, Jr., Assistant Attorney General, John J. Mahon, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Barbara M. Epstein), for defendant United States.

**OPINION**

**GOLDBERG, Senior Judge:** This case is before the Court upon cross-motions for summary judgment. At issue is the proper tariff classification of a part, styled model number "PC 101," used in certain multifunction center ("MFC") machines and facsimile machines. The plaintiff importer, Brother International Corp. ("Brother"), which manufactures the MFC and facsimile machines that use the PC 101, claims that the subject merchandise should be classified under subheading 8473.30.50 of the Harmonized Tariff Schedule of the United States ("HTSUS")

(1998), and may be entered duty free.  The United States Customs

Service ("Customs") argues that the subject merchandise should be

classified under subheading 3702.44.00, HTSUS, dutiable at a rate

of 3.7% ad valorem.  For the reasons that follow, the Court finds

that there are no material facts in dispute and that the subject

merchandise must be classified under subheading 8473.30.50,

HTSUS, and accordingly grants summary judgment for Brother.

## I.    BACKGROUND

The PC 101 is a part, commonly labled a "printing

cartridge,"[1] that consists of a plastic housing with two gears on

each side.  Inside the plastic housing is a roll of chemically

treated polyethylene terephthalate ("PET") film, mounted on a

feed spool and attached to an uptake spool.  The PC 101 is

specifically designed and constructed to be used in four models

of MFC machines[2] and five models of facsimile machines

manufactured and sold by Brother.  When the PC 101 has been

inserted into an appropriate MFC machine, and the machine

---

[1]  Customs emphatically denies that the PC 101 is accurately characterized as a "printing cartridge," and instead refers to the PC 101 as a "'PET' film roll in a plastic housing."  Def.'s Response to Pl.'s Statement of Material Facts Not in Dispute ("Def.'s Undisputed Facts"), ¶¶ 4, 6.  The Court observes from Customs's own exhibits, however, that the PC 101 is consistently described as a "printing cartridge" in its packaging and promotional literature.  See, e.g., Def.'s Ex. A-4 (cardboard box); Def.'s Ex. C (catalog).  Of course, such labeling is not dispositive of the issue of the proper tariff classification of the merchandise.

[2]  MFC machines typically combine the functions of a printer, digital copier, digital scanner, and facsimile machine.

receives a command to print, the gears of the PC 101 interact with those of the MFC machine to advance and position the roll of PET film. The MFC machine's thermal print head then heats the PET film, thereby transferring the film's chemicals to plain paper in a pattern that creates the characters and images desired by the user. Without the PC 101 installed, none of the aforementioned MFC or facsimile machines could function in their intended manner, as they would be unable to print.

Between January and March of 1998, Brother entered four shipments of the subject merchandise at the port of Los Angeles. In January 1999, Customs liquidated the entries, classifying the merchandise as ". . . [p]arts of facsimile machines: [o]ther," under subheading 8517.90.08, HTSUS, dutiable at 2.4% ad valorem. Brother filed timely protests, claiming that the subject merchandise should be classified as "[p]arts and accessories . . . suitable for use solely or principally with . . . machines of heading 8471: [n]ot incorporating a cathode ray tube: [o]ther," under subheading 8473.30.50, HTSUS. Brother argued that the PC 101 was principally used in MFC machines rather than facsimile machines, and that the MFC machines that used the PC 101 were similar in all respects to another Brother MFC machine that Customs Headquarters had previously ruled classifiable under heading 8471. See U.S. Customs Service Headquarters Ruling 961153 (March 30, 1998). Customs denied the protests.

Brother paid all liquidated duties before timely commencing

this action.  In its response to Brother's Complaint, Customs filed a counterclaim in which it alleged that the subject merchandise is properly classified under subheading 3702.44.00, HTSUS, as "[p]hotographic film in rolls, sensitized, unexposed, of any material other than paper, paperboard or textiles . . . without perforations . . . [o]f a width exceeding 105mm but not exceeding 610mm," dutiable at a rate of 3.7% ad valorem.  Both parties moved for summary judgment.

The Court has jurisdiction under 28 U.S.C. §§ 1581(a) and 1583.

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  U.S.C.I.T. R. 56(c).  "The proper scope and meaning of a tariff classification term is a question of law to be reviewed de novo, while determining whether the goods at issue fall within a particular tariff term as properly construed is a question of fact." Franklin v. United States, 289 F.3d 753, 757 (Fed. Cir. 2002) (citations omitted).  That the latter determination is a question of fact does not preclude an award of summary judgment "when there is no genuine dispute as to the underlying factual issue of

-4-

exactly what the merchandise is." <u>Bausch & Lomb, Inc. v. United States</u>, 148 F.3d 1363, 1365 (Fed. Cir. 1998). Thus, the Court must grant summary judgment where the "nature and use" of the subject merchandise is not in dispute, <u>id.</u> (quoting <u>Nissho Iwai Am. Corp. v. United States</u>, 143 F.3d 1470, 1472-73 (Fed. Cir. 1998)), or where "none of the pertinent characteristics of the merchandise is in dispute, and thus the sole issue is a matter of properly interpreting the classification term at issue . . . to determine whether the scope of that term is broad enough to encompass the items with the particular characteristics." <u>Bausch & Lomb</u>, 148 F.3d at 1365 (ellipsis in original) (quoting <u>IKO Indus., Ltd. v. United States</u>, 105 F.3d 624, 626-27 (Fed. Cir. 1997)).

Customs's classification decisions enjoy a statutory presumption of correctness. 28 U.S.C. § 2639(a)(1) (2000). Citing <u>Tomoegawa USA, Inc. v. United States</u>, 12 CIT 112, 681 F. Supp. 867 (1988), <u>aff'd in part</u> 7 Fed. Cir. (T) 29, 861 F.2d 1275 (1988), and <u>Universal Elecs., Inc. v. United States</u>, 20 CIT 337 (1996), <u>aff'd</u> 112 F.3d 488 (Fed. Cir. 1997), Brother argues that Customs's classification is not entitled to this presumption in the instant case, because Customs has admitted that its initial classification of the subject merchandise was erroneous.

If the Court were to find that material facts were sufficiently in dispute as to preclude an award of summary judgment, Brother would be correct. Instead, Brother's argument

-5-

is moot, for "when the Court is presented with a question of law in a proper motion for summary judgment, th[e statutory] presumption [of correctness] is not relevant." Marathon Oil Co. v. United States, 24 CIT __, __, 93 F. Supp. 2d 1277, 1279 (2000). The statutory presumption of correctness is simply "a procedural device that is designed to allocate, between the two litigants in a lawsuit, the burden of producing evidence in sufficient quantity." Universal Elecs. Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997). "[W]ith respect to pure questions of law, such as the proper interpretation of a particular tariff provision or term[,] . . . the importer has no duty to produce evidence as to what the law means because evidence is irrelevant to that legal inquiry." Id. Thus, in a case such as this one, where the Court determines that there are no material facts in dispute, Customs's proposed classification is not entitled to the statutory presumption of correctness.[3]

---

[3] The Court recognizes that this determination contravenes certain language in a recent Court of International Trade decision suggesting otherwise. See Rubie's Costume Co. v. United States, 26 CIT __, __, 196 F. Supp. 2d 1320, 1325 (2002) ("Where [ ] there are no material facts in dispute and only questions of law remain, Plaintiff must show legal error to overcome the statutory presumption of correctness."). In so holding, Rubie's Costume relied on Commercial Aluminum Cookware Co. v. United States, 20 CIT 1007, 1013, 938 F. Supp. 875, 881 (1996). However, the holding of Commercial Aluminum on this point is disfavored. See Rollerblade, Inc. v. United States, 112 F.3d 481, 484 (Fed. Cir. 1997) ("Customs' and the Court of International Trade's (in Commercial Aluminum) interpretation of § 2639 is inconsistent with our precedent . . . ."); Verosol USA, Inc. v. United States, 20 CIT 1251, 1252 n.5, 941 F. Supp. 139, 141 n.5 (1996) ("Were the Commercial Aluminum rule followed, the responsibility of the Court of International Trade to interpret

However, there exists an important distinction between a presumption of correctness, which is a procedural device that allocates evidentiary burdens between two parties to a litigation, and the notion of deference, which is governed by standards of review.  See Universal Elecs., 112 F.3d at 493.  The Court does owe deference to Customs's classification rulings "in accordance with the principles set forth in Skidmore v. Swift & Co., 323 U.S. 134 (1944)."  Franklin, 289 F.3d at 757 (citing United States v. Mead Corp., 533 U.S. 218, 234-35 (2001); Mead Corp. v. United States, 238 F.3d 1342, 1346 (Fed. Cir. 2002)).  The Court of International Trade gives deference to Customs's classification rulings proportional to their "power to persuade," Mead, 533 U.S. at 235 (quoting Skidmore, 323 U.S. at 140), in accordance with their "thoroughness, logic and expertness, [ ] fit with prior interpretations, and any other sources of weight."  Mead, 533 U.S. at 235.  That Customs has abandoned its original classification of the subject merchandise, and now advances another in its litigation briefs, is certainly one factor the Court is entitled to consider in assessing the persuasive power of Customs's proposed classification.

## B.    The Parties' Arguments

Brother claims that the PC 101 is prima facie classifiable

---

tariff terms would be greatly curtailed; no longer determined de novo by the court, the meaning of tariff terms would instead depend on the quality of the advocacy of the litigant challenging Customs' interpretation.").

under heading 8473 of the HTSUS as a "[p]art[] . . . suitable for use solely or principally with machines of headings 8469 to 8472." Brother argues that the PC 101 is a "part" because it is integral to the successful functioning of the machines in which it is used, and that unrebutted evidence proves it is used "principally" with MFC machines, which are classifiable under heading 8471.[4]

Citing Bauerhin Techs. Ltd. P'ship v. United States, 110 F.3d 774 (Fed. Cir. 1997), Brother observes that an imported item is classifiable as a part if it passes either of two tests: (1) it is an "integral, constituent, or component part, without which the article to which it is to be joined, could not function as such article," id. at 779 (quoting United States v. Willoughby Camera Stores, Inc., 21 CCPA 322 (1933)), or (2) it is "dedicated solely for use with another article." Bauerhin, 100 F.3d at 779 (citing United States v. Pompeo, 43 CCPA 9 (1955)). Brother claims that the PC 101 passes both tests. It is an integral part of MFC machines because without the PC 101, such machines could not function in their intended roles as they would lack the means

---

[4] Customs has approved protests for each of the MFC models that use the PC 101, classifying them under subheading 8471.60.6500, HTSUS. Pl.'s Statement of Material Facts Not in Dispute Pursuant to R. 56(h) ("Pl.'s Material Facts"), ¶ 15; Def.'s Material Facts, ¶ 15. Although Customs argues that Brother has failed to establish that the PC 101 is principally used in MFC machines, rather than in facsimile machines (which are not classifiable under headings 8469 to 8472), Customs does not argue that MFC machines are not properly classifiable under heading 8471.

to create a printed image, and would instead display an error message instructing the user to insert a PC 101 cartridge. Brother claims that the PC 101 also passes the second Bauerhin test because it is dedicated solely for use with MFC and facsimile machines, and has no other legitimate or fugitive uses.[5]

In response to Customs's argument that the PC 101 is classifiable as photographic film because it contains a roll of PET film, Brother directs the Court's attention to the decision of the Court of Appeals for the Federal Circuit in Mita Copystar America v. United States, 160 F.3d 710 (Fed. Cir. 1998). In that case, the Federal Circuit reversed this Court's classification of toner cartridges for photocopier machines as "chemical preparations for photographic uses," under subheading 3707.90.30. Instead, the Mita court held that such cartridges were properly classified as "parts and accessories of electrostatic photocopying apparatus," under subheading 9009.90.00, id. at 714, notwithstanding the fact that the toner contained within the cartridges was itself classifiable as "chemical preparations for photographic uses" when imported separately. Id. at 712. The

_____

[5] While contesting their legal relevance, Customs admits the essential accuracy of these characterizations of the PC 101's functions. See Def.'s Material Facts, ¶ 8 (admitting PC 101 is involved in the printing process), ¶ 10 (admitting without the PC 101 installed, none of the MFC machines could function in their intended manner as they would be unable to print), ¶ 11 (admitting that the PC 101 is "designed and constructed to be used" in Brother's MFC and facsimile machines).

-9-

court reasoned that the cartridges were parts of photocopier machines because they "are sold with toner inside; they remain with the toner throughout its use by the photocopier; they are the standard device for providing toner to the photocopier; and they are not designed for reuse." Id. at 712-13. Observing that Note 2(b) to Chapter 90 of the HTSUS required that parts of particular machines "are to be classified . . . with the machines of that kind," and that neither the chapter nor heading notes governing heading 3707 required goods classifiable under that heading to be classified thus, the court held that the cartridges should be classified as photocopier parts. Id. at 713-14. Brother argues that Mita governs the resolution of the instant case because: (1) the toner in the cartridges in Mita is analogous to the PET film roll in the PC 101; and (2) Note 2(b) of Section XVI (which subsumes heading 8473) of the HTSUS requires parts classifiable under heading 8473 to be classified within that heading, just as did the Chapter Note in Mita.

Customs claims that the PC 101 is prima facie classifiable under heading 3702 of the HTSUS as "[p]hotographic film in rolls, sensitized, unexposed, of any material other than paper, paperboard, or textiles." Citing QMS, Inc. v. United States, 19 CIT 551 (1995), in which the Court of International Trade held that rolls of PET film were classifiable as "photographic film" under heading 3702, Customs argues that the PC 101 is likewise classifiable under heading 3702 because it is simply a roll of

-10-

PET film in plastic housing.  Customs argues that whatever the merits of Brother's proposed classification of the PC 101 as a part, because the QMS court found that "photographic film" under heading 3702 was a more specific description than "parts and accessories" under heading 8473, see id. at 561, 563, this court is obliged by principles of stare decisis to classify the PC 101 under subheading 3702.44.00.

### C.    The PC 101 Is Classifiable Under Subheading 8473.30.50

In determining the proper classification of imported merchandise, the Court is guided by the General Rules of Interpretation ("GRI") of the HTSUS and the Additional United States Rules of Interpretation.  See Franklin v. United States, 289 F.3d 753, 757 (Fed. Cir. 2002).  GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes . . . ."  The GRI must be applied in numerical order, see North Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001); thus, if the application of GRI 1 provides the proper classification, the Court may not consider any of the subsequent GRI.  See Mita, 160 F.3d at 712.

### 1.    The PC 101 is a "part"

For the PC 101 to be classifiable under heading 8473, Brother must first establish that it is a "part."  The PC 101 has the indicia of a part, notwithstanding the fact that it contains a roll of PET film that would otherwise be classifiable as

"photographic film[]" if imported separately. The PC 101 is sold with the PET film inside; the PC 101 remains with the PET film throughout its use by the MFC and facsimile machines; and the PC 101 is the standard device for providing the MFC or facsimile machines with the PET film that is required for them to be able to print images on paper. Cf. Mita, 160 F.3d at 712-13.[6] Moreover, as Brother argues, the PC 101 comports with the definitions of parts set forth in Bauerhin Techs. Ltd. P'ship v. United States, 110 F.3d 774 (Fed. Cir. 1997). First, the PC 101 is an integral part of the MFC and facsimile machines that use it, for these machines cannot function in their intended capacity unless the PC 101 is properly inserted, as they would lack the means to create a printed image. Cf. id. at 779 (citing United States v. Willoughby Camera Stores, Inc., 21 CCPA 322 (1933)). And second, the cartridge is exclusively designed and constructed

---

[6] The PC 101, unlike the toner cartridges at issue in Mita, is apparently capable of reuse. See Def.'s Ex. C (advertising refill rolls of PET film for the PC 101). In light of the other indicia that the PC 101 is a part, the Court does not understand the PC 101's suitability for reuse to preclude a determination that it is a part. The reuse provision in Mita was derived from Bruce Duncan Co., Inc. v. United States, 63 Cust. Ct. 412 (1969), but in that case the court focused on the imported butane cartridges' incapacity for reuse in order to distinguish them from ordinary shipping containers holding butane. In light of the especial design, including gears, of the PC 101's plastic housing, Customs cannot and does not contend that it is merely a shipping container.

Neither does the possibility that the refill rolls, imported individually, might be properly classified as "photographic films" require a contrary result. It is axiomatic that the classification of imported articles is determined by their condition at the time of importation. See, e.g., Donalds Ltd. v. United States, 32 Cust. Ct. 310, 314 (1954).

for use in Brother's MFC and facsimile machines.  Cf. Bauerhin, 110 F.3d at 779 (citing United States v. Pompeo, 43 CCPA 9 (1955)); see also infra Part II.D.2.  In light of Mita and Bauerhin, the Court concludes that the PC 101 is a "part" within the meaning of the tariff statutes.

### 2. Brother's uncontroverted evidence establishes that the PC 101 is principally used in MFC machines

Customs argues that even if the PC 101 may be considered a "part," the Court cannot find that it falls within the ambit of heading 8473 because the determination of whether the PC 101 is "principally used" with machines of heading 8471, i.e., MFC machines rather than facsimile machines, is a factual determination not amenable to disposition on summary judgment. The Court finds this contention to be without merit.

Customs is certainly correct that the determination of whether the PC 101 is principally used with MFC machines is primarily a factual determination.  However, there exists no genuine issue as to this material fact, as Customs has proffered nothing to rebut the substantial evidence Brother has adduced showing that the PC 101 is principally used with MFC machines. Customs concedes that the PC 101 is designed and constructed for use in Brother's MFC and facsimile machines, see supra n.5, and has not alleged that it has any other legitimate or fugitive uses.  Brother has submitted an affidavit from Matthew Hahn, Director of Marketing, Product Accessories, at Brother, stating that the PC 101 can only be used with certain of Brother's MFC

-13-

and facsimile machines and that it has no other known uses. Thus, there is no real dispute that the PC 101 is used exclusively in Brother's MFC and facsimile the machines; the only remaining issue is in which one of the two types of machines it is principally used.[7]

_____

[7] As Customs concedes that the PC 101 has no other uses, the Court can reject out of hand Customs's argument that summary judgment is inappropriate because Brother has not established the "class or kind" of goods to which the PC 101 belongs. Customs's argument rests on its misconstruction of Add'l U.S. R. Interpretation 1(a), which provides:

> a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use.

Customs maintains that because heading 8473 is a use provision, Brother is obliged to demonstrate the "class or kind" to which the subject merchandise belongs--"not merely for the specific merchandise at issue (i.e., the PC 101), but for the 'class or kind' of merchandise to which that importation belongs (e.g., 'photographic film')." Def.'s Reply Mem., at 12-13. Customs's argument betrays a fundamental misapprehension of the nature and purpose of the "class or kind" inquiry.

"The purpose of 'principal use' provisions in the HTSUS is to classify particular merchandise according to the ordinary use of such merchandise, even though particular imported goods may be put to some atypical use." Primal Lite, Inc. v. United States, 182 F.3d 1362, 1364 (Fed. Cir. 1999) (noting by way of example that a race car imported for use in advertising would still be classified as a vehicle used principally for automobile racing). The scope of the "class or kind" inquiry should be narrowly tailored to "the particular species of which the merchandise is a member." Id. The inquiry takes into account whether the pertinent characteristics of the imported merchandise are akin to those of the typical merchandise falling within the proposed use classification. See Minnetonka Brands, Inc. v. United States, 24 CIT __, __, 110 F. Supp. 2d 1020, 1027 (2000) (factors for consideration include purchasers' expectations, the environment of the sale, and recognition within the trade).

Thus, the relevant inquiry here is not, as Customs suggests,

Mr. Hahn's affidavit states that in 1998, the year in which the subject merchandise was entered, Brother sold 19,801 MFC machines that use the PC 101, and 6,397 facsimile machines that use the PC 101. Expressed in relative terms, 75.6% of the machines were MFC machines and 24.4% were facsimile machines--a ratio of more than three to one. The uncontroverted and unimpeached testimony of a single witness may be sufficient to establish the use of an imported good. United States v. Gardel Indus., 33 CCPA 118, 122 (1946); Arden Mfg. Co. v. United States, 65 Cust. Ct. 594, 599 (1970); accord Innotech Aviation Ltd. v. United States, 21 CIT 1392, 1395, 992 F. Supp. 411, 414 (1997). While Customs posits that the subject merchandise could be principally used as replacement parts in facsimile machines sold prior to 1998, it offers not a scintilla of evidence to support

---

how the class of "photographic film" is principally used, because heading 3702 is not the heading being construed (and is not, in any event, a use heading). Instead, the only "class or kind" issue in this case is whether Brother can demonstrate that the PC 101 falls within the class or kind of "parts for MFC machines," rather than the class or kind of "parts for facsimile machines." Cf. Pistorino & Co., Inc., 67 CCPA 1, 3-4, 607 F.2d 989, 991-92 (1979) (holding that entries of beam cutters principally destined for use in the shoe industry were not classifiable as "shoe machinery" because they were not shown to be of a different class or kind than other beam cutters). That determination turns on principal use.

Brother's undisputed evidence shows that the subject merchandise was not entered for some atypical or fugitive use, that the PC 101's essential characteristics are not unlike those of parts for multifunction centers, that the PC 101 is treated as a part of an MFC machine within the marketplace, and, as discussed infra, that the PC 101 is principally used as a part for MFC machines. Consequently, there is no live factual dispute concerning the "class or kind" of goods to which the PC 101 belongs.

this idle speculation.  More importantly, as explained infra n.7, the use inquiry focuses on the principal use, at the time of importation, of the class or kind of good to which the subject merchandise belongs.  Brother's sales figures for 1998 clearly establish that the principal use for the PC 101 at the time of importation was as a part for MFC machines.

In opposing Brother's motion for summary judgment, Customs is not entitled "simply [to] rest on its pleadings.  Rather, it must produce evidence . . . which set[s] forth specific facts showing that there is a genuine issue for trial."  Black & White Vegetable Co. v. United States, 24 CIT __, __, 125 F. Supp. 2d 531, 536-37 (2000) (internal quotation marks omitted).  See also Crown Operations Int'l, Ltd. v. Solutia, Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002) ("Once the moving party has satisfied its initial burden, the opposing party must establish a genuine issue of material fact and cannot rest on mere allegations, but must present actual evidence.").  As Customs has not met this burden, there is no material dispute that the PC 101 is principally used with machines of heading 8437.  Because the Court has already determined that the PC 101 is a part, the subject merchandise is prima facie classifiable under subheading 8473.30.50, HTSUS.

**D.   The PC 101 must be classified under heading 8473 regardless of whether it is also prima facie classifiable as "photographic film[]"**

Having established that the subject merchandise is prima facie classifiable as parts of MFC machines, the Court turns to

-16-

Customs's competing proposed classification.  Customs argues that because the court in QMS, Inc. v. United States, 19 CIT 551 (1995), classified a roll of PET film as "photographic film" under heading 3702, the PC 101 is likewise classifiable under heading 3702 because it contains a roll of PET film.  Customs contends that even if the PC 101 is also prima facie classifiable as a part of a MFC machine, by operation of GRI 3(a)[8] it must be classified under heading 3702, as the QMC court found the heading for "photographic films" to be more specific than the alternative "parts and accessories" classification at issue in that case.  Customs further argues that the Court must classify the PC 101 as photographic film out of respect for congressional intent, and for the principles of stare decisis.

### 1.    The Court is not bound by stare decisis to follow QMS

Taking these arguments in reverse order, the Court begins by rejecting Customs's argument that the Court's obligation to follow QMS controls this case.  "The applicability of the doctrine of stare decisis is within the discretion of the [C]ourt."  De Laval Separator Co. v. United States, 1 CIT 144, 148, 511 F. Supp. 810, 814 (1981).  Certainly, the Court recognizes the general principle that "stare decisis is bottomed on the sound public policy that there must be an end to

---

[8]  GRI 3(a) directs that when goods are prima facie classifiable under two or more headings, they should be classified under the heading providing the most specific description.

-17-

litigation and that, therefore, questions formerly determined should not be readjudicated except on a showing of clear and convincing error in the former holding." <u>Schott Optical Glass, Inc. v. United States</u>, 7 CIT 36, 38, 587 F. Supp. 69, 70-71 (1984), <u>rev'd</u> 3 Fed. Cir. (T) 35, 750 F.2d 62 (1984). However, the doctrine presents special problems in the context of classification cases. It is a well-established principle that "in customs classification cases a determination of fact or law with respect to one importation is not <u>res judicata</u> as to another importation of the same merchandise to the same parties." <u>Schott Optical Glass, Inc. v. United States</u>, 3 Fed. Cir. (T) 35, 36, 750 F.2d 62, 64 (1984) (citing <u>United States v. Stone & Downer Co.</u>, 274 U.S. 225, 236 (1927)). At a minimum, the party opposing the application of <u>stare decisis</u> must be afforded an opportunity to show that the prior decision was clearly erroneous. <u>Schott Optical</u>, 3 Fed. Cir. (T) at 37-38, 750 F.2d at 64-65. Application of <u>stare decisis</u> is particularly inappropriate here, where the imported merchandise is different, the parties are different, and the intervening decision by the Federal Circuit in <u>Mita</u> may well have circumscribed the relevance of <u>QMS</u> to the instant case.

**2.   Evidence of Congress's intent with respect to photographic films undercuts Customs's argument that the PC 101 must be classified under heading 3702**

In <u>QMS</u>, the court rejected Customs's classification of the PET film rolls at issue as "typewriter or similar ribbons," and

-18-

then determined that the rolls were classifiable as "photographic film" because it understood the statutory and scientific definitions of "photographic" to be "sufficiently broad so as to indicate a legislative intent to include within the tariff provisions of Chapter 37 more processes than what may be considered conventional photography." 19 CIT at 562. Applying GRI 3(a), the court then classified the merchandise as photographic film, in preference to the importer's proposed classification of the rolls as "parts and accessories," on the grounds that the latter classification was less specific.

In classifying rolls of PET film as photographic film, the QMS court did not have occasion to consider the legislative history that Customs now cites as evidence that Congress intended for photographic film to be classified only as such. In United States v. American Express Co., 29 CCPA 87 (1941), which Customs cites extensively, the United States Court of Customs and Patent Appeals held that film separators that were parts of film packs were not classifiable as "parts of cameras." The court reasoned that the film packs of which the film separators were a part could not themselves be classified as parts of cameras, because Congress intended that rolls of film not be dutiable as parts of cameras. Id. at 92-95. Customs seizes on this holding as evidence that Congress intended that the PET film in the PC 101 be classified as photographic film.

Customs's argument, however, overlooks the rationale

-19-

underlying Congress's intent.  As the <u>American Express</u> court recognized, Congress provided for separate treatment of film rolls in the Tariff Schedule of the United States ("TSUS") because it recognized that film was a discrete product; like the paper used in a typewriter, it was simply "the material upon which the camera operates."  <u>Id.</u> at 95.  Through interaction with the camera, the film becomes exposed, and is removed, retaining its essential characteristic as an item with intrinsic value, suitable for use in other purposes, such as archiving images or making prints therefrom.  <u>See</u> <u>id.</u>; <u>see also</u> Charles Hagen, "Just How Sacred Should Photo Negatives Be?", N.Y. Times, C-13 (March 3, 1992) (discussing almost priceless value of Edward Weston's film negatives).

By contrast, the PET film roll within the PC 101 is <u>not</u> the material on which an MFC machine that uses it operates.  It is not the output of the MFC machine, but merely plays a role in the production of that output, the paper on which an image is created through interaction of the PC 101 and the MFC machine's thermal print head.  Once the PET film roll within the PC 101 is used up, it is discarded; it has no intrinsic value or separate purpose. Thus, the evidence of Congress's intent actually militates against the classification of the PET film roll within the PC 101 as photographic film.  The court need not decide this issue, however, for assuming <u>arguendo</u> that the PET film roll within the PC 101 is <u>prima facie</u> classifiable as photographic film, the

rationale underlying Congress's intent that it be classified as such rather than as a part clearly does not apply.

### 3. By operation of GRI 1 and Section XVI Note 2(b), HTSUS

Customs claims that even if the PC 101 is prima facie classifiable both as a part of MFC machines and as photographic film, in accordance with QMS and GRI 3(a) it must be classified as the latter because that heading provides the more specific description. See QMS, 19 CIT at 561, 563.

As discussed infra, the GRI must be applied in numerical order. See North Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001). Thus, if the application of GRI 1 provides the proper classification, the Court need not apply the relative specificity provision of GRI 3(a). GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." Note 2(b) to Chapter XVI provides that "[o]ther parts, if suitable for use solely or principally with a particular kind of machine, . . . are to be classified with the machines of that kind or in heading . . . 8473 . . . as appropriate." Because the relative section note provides that goods classifiable as parts of MFC machines shall be classified as such, the Court need not perform a relative specificity analysis under GRI 3(a).[9]

_____

[9] Were the Court to undertake such an analysis, it is far from certain that it would reach the same result as did the QMS court. Under the rule of relative specificity, a good should be classified under "the provision with requirements that are more difficult to satisfy and that describe the article with the

-21-

## III. CONCLUSION

For the foregoing reasons, the Court finds that the subject merchandise must be classified under subheading 8473.30.50, HTSUS, as a "[p]art[] . . . suitable for use . . . principally with . . . machines of heading [8471]: [n]ot incorporating a cathode ray tube: [o]ther."

 

 

_____
**Richard W. Goldberg**
**Senior Judge**

**Dated:      July 31, 2002**
              **New York, NY**

---

greatest degree of accuracy and certainty." <u>Orlando Food Corp. v. United States</u>, 140 F.3d 1437, 1441 (Fed. Cir. 1998). "[A] product described by both a use provision and an <u>eo nomine</u> provision is <u>generally</u> more specifically provided for under the use provision." <u>Id.</u>

<u>**ERRATA**</u>

<u>Brother International Corp. v. United States</u>, Court No. 00-01-00007, Slip Op. 02-80, issued July 31, 2002.


- On page 1, the identification of plaintiff's counsel should read "Barnes, Richardson & Colburn (<u>Sandra Liss Friedman</u>, <u>Frederic D. Van Arnam Jr.</u>, and <u>Joseph M. Spraragen</u>), for plaintiff Brother International Corp."

- All five references to ""photographic film[]"" or ""photographic films""(see page 12, line 1; page 12, lines 15-16 of footnote 6; page 16, subheading D; page 17, line 9; and page 18, sub-subheading 2) should instead each read ""photographic film""

- On page 21, sub-subheading 3, which reads

  "**3.  By operation of GRI 1 and Section XVI Note 2(b), HTSUS**"

  should instead read

  "**3.  By operation of GRI 1 and Section XVI Note 2(b), HTSUS, the PC 101 must be classified under heading 8473**"